# Wohlert *v.* Seibert, Appellant.

*Physicians—Malpractice—Wrong diagnosis—Glaucoma—Conjunctivitis.*

In an action against a physician for malpractice no presumption of negligence can arise from the fact that the defendant failed to effect a cure. The burden of proof in such a case is on the plaintiff to show that the defendant did not exercise reasonable care, skill and diligence in his treatment of the case.

The standard by which the degree of care, skill and diligence required by physicians is to be determined, is not the highest order of qualification obtainable, but is the care, skill and diligence which are ordinarily possessed by the average of the members of the profession in good standing. The acquisition of professional learning and skill being required by law, it is the duty of a physician and surgeon to acquire the same, and he is liable for injuries caused by the failure of duty to exercise such learning and skill. The plaintiff must show, not only that the physician was negligent or unskilful, but also that the injury resulted from such negligence or unskilfulness.

A physician who is merely a general practitioner cannot be held liable in damages to a patient for diagnosing and treating a disease of the eye as conjunctivitis when it was in fact glaucoma, where the evidence shows that glaucoma is a very rare disease, that it is incurable in character, that its certain diagnosis could be made only by the skilled expert of special training, skill and experience, that it should be treated with remedies and appliances which are never expected to be within the reach of the general practitioner of medicine, that its prominent symptoms were so nearly identical with those of conjunctivitis that the diagnosis made by the defendant was one reasonably to be expected from a general practitioner, and that the treatment given was not found faulty by any general practitioner or expert who testified in the case.

Argued March 11, 1903. Appeal, No. 19, March T., 1903, by defendant, from judgment of C. P. Dauphin Co., March T., 1901, No. 213, on verdict for plaintiff in case of Carl Wohlert v. William H. Seibert. Before BEAVER, ORLADY, SMITH, PORTER and MORRISON, JJ. Reversed.

Trespass to recover damages for malpractice. Before WEISS, J.

The facts are stated in the opinion of the Superior Court.

The court refused binding instructions for defendant.

Verdict for plaintiff for $1,500, on which judgment was entered for $500, all above that sum having been remitted.

214        WOHLERT v. SEIBERT, Appellant.

Assignment of Errors—Opinion of the Court.   [23 Pa. Superior Ct.

*Error assigned* was in refusing binding instructions for defendant.

*Meade D. Detweiler*, with him *John E. Fox*, for appellant.—A physician is not required to possess the highest order of qualifications which may be attained, nor that which belongs to men of rare attainments, or to those who have made a specialty of some branch of the profession : McCandless v. McWha, 22 Pa. 261 ; Potter v. Warner, 91 Pa. 362 ; Reber v. Herring, 115 599 ; Richards v. Willard, 176 Pa. 181.

In an action for malpractice against physicians and surgeons to recover damages for the alleged unskilful and negligent operation upon the plaintiff's eye, which resulted in injury and disease, the plaintiff must affirmatively prove that the injury and disease were produced by the operation and that the defendant did not exercise ordinary skill and care in performing the operation : Pettigrew v. Lewis, 26 Pac. Repr. 458 ; Feeney v. Spalding, 80 Me. 111 (35 Atl. Repr. 1027) ; Peck v. Hutchinson, 55 N. W. Repr. 511.

*Oscar G. Wickersham*, with him *Lyman D. Gilbert*, for appellee.—Defendant was bound to exercise reasonable and ordinary care, skill and diligence, and what is reasonable and ordinary care is a question peculiarly for the jury : McCully v. Clark & Thaw, 40 Pa. 406 ; Haire v. Reese, 7 Phila. 138.

It was proper to submit the case to the jury : Longenecker v. Penna. R. R. Co., 105 Pa. 328.

OPINION BY ORLADY, J., May 22, 1903 :

The plaintiff recovered a verdict of $1,500 (which was reduced by the court to $500), against the defendant, a practicing physician, as damages for alleged careless, unskillful, negligent and improper treatment of a disease, which affected the plaintiff's eyes and terminated in total blindness.  The defendant had been the family physician of the plaintiff for about fifteen years and was called to see him on March 7, 1900, and found that he had not been in good health for nearly a week, suffering with febrile symptoms, severe pains in the head and body, the eyes inflamed, swollen, sensitive to light and very painful.   The defendant was a graduate of the University

of Pennsylvania and had been a general practitioner of medicine for twenty-eight years. After making an examination the defendant prescribed local cold applications and certain medicines, to alleviate pain and induce a constitutional and local effect. The defendant made some ten visits to the patient (the last being on April 14). The plaintiff was examined at the City Hospital of Harrisburg on May 2, 1900, when it was found that he was totally blind, a condition which the plaintiff alleges had existed since April 17.

The cause of blindness was chronic glaucoma, which seems to have been accurately determined after an examination by several specialists. The case is exceptional in many respects, but the important facts affecting the liability of the defendant are not seriously in dispute.

Glaucoma is stated by all physicians to be an exceedingly rare disease, one of the experts stating that during twenty years of private and hospital practice in this country and abroad, he had examined not less than 50,000 subjects with diseases of the eye, and of that number not more than 150 cases of glaucoma had been discovered. The plaintiff's expert, Dr. Park, testified that out of about 10,000 cases examined by him, he had not averaged more than three a year during his twelve years of practice. All the others speak of it as exceedingly rare, diagnosed only in clinical or special practice. While divisible into three stages—acute, subacute and chronic—the result is unfortunately the same, nearly always resulting in total blindness. A specialist only is capable of making a convincing diagnosis of the affected organ, the instrument used—an ophthalmoscope—is rarely a part of the equipment of the average practitioner, and its use is understood by specialists only. The symptoms are frequently confused with those of other diseases and are often mistaken for cataract, iritis, keratitis and conjunctivitis, and while the standard text books on diseases of the eye furnish the distinguishing characteristics, that source of knowledge does not avail the practitioner unless he has actual cases to see and examine, or as Dr. Park, plaintiff's expert, states, " The works, no doubt, do show the difference of symptoms in diagnosing cases, but, unless he has the cases to apply to this information, he is liable to be mistaken. He is advised in this way that the informa-

tion gives the symptoms of these various diseases ; then he must use his judgment as to which is which." Dr. Park very frankly states that the general practitioner rarely sees such cases ; that he would be justified in treating it as if it were conjunctivitis. He testified as follows : " Q. Given a case of conjuctivitis, a typical case, with swollen eyelids, matted to the eyeball, the ball red, blood vessels engorged, extending into the cornea; would not a general practitioner be justified in diagnosing that as a case of conjunctivitis ? A. Yes, sir. Q. Could a patient at the same time be afflicted with chronic glaucoma and the conditions be obscured by the conjunctivitis ? A. There might be chronic glaucoma in progress in the case and he might have a severe attack of conjunctivitis. Q. And that would puzzle even an expert, would it not? A. Yes, it would ; no doubt of it." Dr. Plank, called by the plaintiff, who graduated at the Jefferson Medical College, in 1896, and who had been engaged in general practice, testified that he had never seen a case of glaucoma, and admitted the diffi-culty of diagnosis. Dr. Shope, called by the plaintiff, gradu-ated at the Jefferson Medical College in 1890, and since then had been engaged in general practice, had seen but one case, and that one made certain only after an examination by an expert with the opthalmoscope. Dr. Peters, who graduated at the Jefferson Medical College in 1886, and a general prac-titioner, had never seen a case of glaucoma in his own prac-tice, and his testimony was the result of his study of the sub-ject.

The crucial test of the competency of a witness offered as an expert to give testimony as such is the resolution of the question as to whether or not the jury or persons in general who are inexperienced in or unacquainted with the particular subject of inquiry would without the assistance of one who possesses a knowledge be capable of forming a correct judg-ment upon it. A general practitioner is probably not incom-petent to give expert testimony on the ground that he had not had in his experience a case like the one in question (Rogers on Expert Testimony, 102), and when he has given special study and observation, though without experience, his testi-mony as an expert may be received and his credibility left to the jury.

To determine the character of the disease an examination by palpation or with the fingers, to ascertain the tension or hardness of the eyeball is necessary and this, to be of any value, requires a delicate touch which can only be acquired by long experience in touching many eyes.    The special remedies suggested are eserine and pilocarpine, and unless relief from pain is soon secured, an operation—iridectomy—is indicated, which consists of making an incision through the cornea and drawing out part of the iris, cutting it, and then closing and bandaging, an operation which is never performed by a general practitioner.    Dr. Park further testifies that the disease is of insidious growth and is very subtle in its manifestations, and that after the operation of iridectomy while the pain would likely be relieved and in some cases vision improved temporarily, that generally the cases result in total blindness.    When asked " Q. Is it possible for the general practitioner to detect a case of chronic glaucoma ? " he answered, I would consider it very difficult for a general practitioner to diagnose a case of chronic glaucoma ; and taking the symptoms as given by the plaintiff a general practitioner might well be mistaken as to the technical condition of the eye.

A number of eminent physicians and specialists were called on the part of the defendant, and they all testified that from the symptoms given by the plaintiff that the course of treatment prescribed by the defendant was approved by the profession and was that ordinarily adopted by general practitioners.

While the opinion of the court in refusing a new trial is not part of the record, the statements of the learned trial judge as announced therein represent a fair conclusion from the uncontradicted testimony of the experts called in the case.    He says, " That the plaintiff was afflicted with that dread disease glaucoma at the time the defendant was called to attend him professionally is reasonably certain, that the ravages of the disease had made such inroads at that time that a cure was well-nigh impossible and that a prolongation of sight during a comparatively short period was the only probability is also reasonably certain.    At the time the defendant prescribed for the plaintiff the disease was rapidly advancing to, if it had not already reached, the acute stage.    The percentage of cures is small.    All or nearly all afflicted with this insidious

malady go blind. The disease was galloping towards total blindness and probably no human agency could have arrested that fatal calamity."

The defendant submitted a number of points, the most important of which was, " Under all the evidence the verdict must be for the defendant." It is conceded that no presumption of negligence can arise from the fact that the defendant failed to effect a cure. It must also be conceded that the burden of proof in such a case is on the plaintiff to show that the defendant did not exercise reasonable care, skill and diligence in his treatment of the case. The standard by which the degree of care, skill and diligence required of physicians is to be determined, is not the highest order of qualification obtainable, but is the care, skill and diligence which are ordinarily possessed by the average of the members of the profession in good standing. The acquisition of professional learning and skill being required by law, it is the duty of a physician and surgeon to acquire the same, and he is liable for injuries caused by the failure of duty to exercise such learning and skill. The plaintiff must show, not only that the physician was negligent or unskillful but also that the injury resulted from such negligence or unskillfulness : Ewing v. Goode, 78 Fed. Repr. 442 ; Whitesell v. Hill, 37 L. R. A. 830. He is bound to exercise skill as is ordinarily possessed and used by physicians and surgeons in the vicinity or locality in which he resides, having regard to the advanced state of the profession at the time : Janney v. Housekeeper, 2 L. R. A. 587, and notes. The implied contract of a physician or surgeon is not to cure but to treat the case with reasonable diligence and skill : McCandless v. McWha, 22 Pa. 261 ; Potter v. Warner, 91 Pa. 362 ; Richards v. Willard, 176 Pa. 181.

The only reasonable conclusion to be reached from the undisputed facts is that the plaintiff was suffering at the time of the defendant's first visit from an incurable disease, and the most that could be hoped for even from the standpoint of the specialist was alleviation of pain and postponing the inevitable blindness which followed. No physician testified that the treatment administered by the defendant was not clearly indicated by the symptoms, and none testified that the symptoms as proven did not fairly and reasonably indicate conjunctivitis,

as diagnosed by the defendant, and further all agreed that the certain diagnosis of glaucoma could be made only by the skilled expert of special training, skill and experience, and should be treated with remedies and appliances which are never expected to be within the reach of the general practitioner of medicine.  It was not possible for the jury to separate the degree of pain which the plaintiff suffered, as induced by the disease of glaucoma, from that which might have resulted had a different course of treatment been pursued; and the verdict, as originally given, or in the amount as reduced by the court, represents no more than a mere guess, founded on possibilities not warranted by any evidence in the case.  The prominent symptoms were so nearly identical with those of a malady, the manifestations of which the profession is well acquainted, that the diagnosis made by the defendant was, under the testimony, the one reasonably to be expected from a general practitioner, and the treatment given was not found faulty by either general practitioner or expert.  However deplorable the result may be it is contrary to common justice, that the defendant should be mulcted in damages for a result which he did not produce and could not avert.

The court would have been justified in sustaining the defendant's motion for a nonsuit, for the reason that the plaintiff did not establish affirmatively that the defendant did not have, or having did not employ, proper care, skill and diligence in the treatment of the plaintiff's eyes, and, second, that such treatment resulted in, contributed to or caused the loss of sight or undue and unnecessary pain and suffering.  Whatever of possible doubt there might have been at the close of plaintiff's case, it was unquestionably removed by the testimony adduced by the defendant, and, under all the evidence, it was the duty of the court to give binding instructions to the jury to find for the defendant.

The judgment is reversed.