## Van Den Beemt v. Pfahler.

*Physicians and surgeons—Malpractice—Negligence—Burden of proof.*

1. A physician or surgeon who has given a patient the benefit of his best judgment is not liable for negligence, even if his judgment was erroneous, unless the error was so gross as to be inconsistent with reasonable and ordinary skill and care.

2. In an action for malpractice by a patient against a physician or surgeon, the burden of proof is on the plaintiff to show that the defendant did not exercise reasonable care, skill and diligence in his treatment of the case. A jury may not infer negligence from the mere happening of the injury or the subsequent condition of the injured part of the body; no presumption of negligence arises from the fact that defendant failed to effect a cure.

3. A jury may not be permitted to guess at the cause of the injury and find that the negligence of the defendant was the cause, where there were several other causes than the one alleged which might have produced the physical condition complained of by the plaintiff.

4. The plaintiff, a violinist, having sustained a fracture of the wrist from a fall, on being recommended by a surgeon to have X-Ray treatment administered, employed defendant for that purpose. The X-Ray treatments were administered on or about July 5 and 19, 1918. Plaintiff's wrist became worse some time afterward, exuding pus and sloughing flesh. He then consulted another physician and was recommended to use scarlet red ointment. He did so, and his wrist became worse. An operation was performed in December, 1919, his wrist became stiff and he was unable to follow his profession. He sued the surgeon who had given the X-Ray treatment on the ground that his whole trouble originated from an X-Ray burn. It appeared in plaintiff's case that an X-Ray of less than ordinary strength had been administered; that scarlet red ointment applied to a surface already irritated might have produced the condition which rendered the operation necessary; and that for some time after the alleged injury he continued to play the violin: *Held*, that a compulsory non-suit was properly entered.

Trespass to recover damages for malpractice. C. P. No. 3, Phila. Co., Dec. T., 1919, No. 4548.

Remarks of the court upon entering non-suit.

*Claude L. Roth* and *Frank H. Schrenk*, for plaintiff.

*William G. Wright*, for defendant.

DAVIS, J., Oct. 17, 1921.—The plaintiff brings this action to recover damages for permanent injuries sustained, or a condition resulting, as he avers, due to negligence of the defendant in applying X-Ray treatment to his hand, which had been injured some time prior to the treatment by the defendant. It appears that in February, 1918, the plaintiff had sustained a fracture of the bones of the left hand at the wrist, due to a fall; that immediately after the injury the plaintiff was attended by Dr. La Place, a well-known surgeon, who, on or about July 5, 1918, directed the plaintiff to have taken an X-Ray photograph of the injured wrist and X-Ray treatment administered to it. This was done on that date by the defendant. The defendant, on being called by the plaintiff for cross-examination, testified that at the time the plaintiff called at his office the defendant took an X-Ray photograph of the plaintiff's hand and also gave an X-Ray treatment. Another X-Ray treatment was administered to the plaintiff's hand by an assistant of the defendant under the direction of the defendant, although the defendant was not personally present, on July 19, 1918. The defendant did not again see the plaintiff until April 14, 1919, at which time there was no X-Ray treatment, nor was there any subsequent X-Ray treatment of the plaintiff by the defendant or under his direction. The plaintiff had not been under the observation or care of the defendant from July 27, 1918, until April 14, 1919. It appears that as time went on the injured member became in a very serious condition, exuding

pus and the flesh sloughing. After the X-Ray treatment by the defendant, the plaintiff had consulted another physician, Dr. Martin, who suggested the application of an ointment known in the medical profession as scarlet red ointment. Dr. La Place testified, in reference to this ointment, that it is a highly irritating medicine, and because of its irritating properties it does good in individual cases, but that it is dangerous to use it on any part of the body that is at all delicate; that it is "much more dangerous to apply on places that are already extra sensitive, as that place was at that time, so there is more than a likelihood that this second breaking down was due to the red ointment—there is more than a liklihood—I cannot swear to it, of course, but there is more than a likelihood that this irritating stuff on that made the already delicate surface of the hand break down." Dr. La Place testified that he met the plaintiff on the street in December, 1919, and then discovered that the plaintiff had been using the scarlet red ointment. He requested the plaintiff to call at his office, and, after consultation with Dr. John Chalmers Da Costa, a well-known surgeon of this city, an operation was performed by Dr. La Place, who cut away certain portions of the flesh which had sloughed; and it appears that some of the tendons were involved and disappeared by dissolution or decay. The plaintiff's hand is now in the condition of being stiff, and he is now incapacitated from following his occupation as a violinist.

Dr. Pfahler, the defendant, testified that the dose administered at both the X-Ray treatments was not a full erythema dose, as it is called, by which is meant, according to the testimony of the defendant, an application which will produce redness of the skin, but that it was three-quarters of an erythema dose, and that if there was an X-Ray burn upon the plaintiff's hand, which he did not admit, it was due to the fact that the plaintiff had what is known in the medical profession as an idiosyncracy, which the court understands to mean a super-sensitiveness to heat or liability to burning. Dr. Pfahler further testified that he had inspected the apparatus by which the X-Rays are produced; that it was in good condition, and that the dose as given by his assistant was also three-quarters of an erythema dose.

In my opinion, the plaintiff has failed to show that the condition of his wrist and hand was due to any negligence on the part of the defendant in applying the X-Ray treatment, either on July 5, 1918, or on July 19, 1918. Dr. Da Costa testified that he saw the plaintiff in March, 1920; that the plaintiff then had a raw spot on his hand, the result of sloughing, which could have been caused by an injury, and pus formation.

The plaintiff predicates his right to recover upon the assumption that there was an X-Ray burn, and that that X-Ray burn was due to the negligence of the defendant in the application of the X-Ray. In an action against a physician for malpractice, no presumption of negligence can arise from the fact that the defendant failed to effect a cure. The burden of proof in such a case is upon the plaintiff to show that the defendant did not exercise reasonable care, skill and diligence in his treatment of the case. The defendant cannot be held liable in this case for the present condition of the plaintiff's injured hand upon a mere presumption that there was an X-Ray burn. The burden is on the plaintiff to prove that fact; and I am of opinion that he has failed to show that there was an X-Ray burn. He has failed to show that the defendant did not exercise reasonable care, skill and diligence in his treatment of the case. There is no evidence whatever that the X-Ray treatment applied by the defendant was an improper treatment or that it was not skillfully performed, or that there was an overdose of electric current or any other

1 D. & C.

Van Den Beemt v. Pfahler.

element which may cause an X-Ray burn. The law in this State has not gone so far, in cases of this character or other actions to recover damages for negligence, as to permit a jury to infer negligence from the mere happening of an injury or the subsequent condition of an injured part of the body. The fact that the injured limb is defective after treatment is not evidence of negligence. Where a physician exercises ordinary skill in keeping with approved methods, he is not liable for a mistake of judgment, even if such mistake of judgment could be deduced from the testimony in this case, and there is no evidence whatever that the defendant erred in his judgment or was negligent in his method of treatment. It has been held that a surgeon or doctor is not an insurer of his patients. He only undertakes to employ such skill and diligence as are ordinarily exercised in his profession, and in judging of the degree of skill regard is to be had to the advanced state of the profession at the time. There is no evidence that the defendant was not a proficient practitioner of the particular methods used in this case at the time of its application to the plaintiff. A physician who has given a patient the benefit of his best judgment is not liable for negligence, even if his judgment is erroneous, unless the error is so gross as to be inconsistent with reasonable and ordinary skill and care. Unfortunately for the plaintiff in this case, it appears that there were many intervening conditions, applications and treatments—I am referring to the testimony of Dr. Da Costa and Dr. La Place—and that many other reasons could be assigned for the condition of the plaintiff's hand immediately prior to the operation by Dr. La Place in March, 1920, there having been an interval of nearly two years from the last treatment by the defendant until the time of the operation by Dr. La Place. In the meantime, the plaintiff had used medicine and ointments not prescribed by the defendant. There is no evidence that if the plaintiff had not consulted Dr. Pfahler, the defendant, and had not had the X-Ray treatment, his hand would not have been in the condition that it was immediately prior to the operation by Dr. La Place in March, 1920, and the burden was on the plaintiff to show, when he alleges a condition upon which he bases his right to recover, that that condition was due to the negligence of the defendant. The jury may not be permitted to guess at the cause and find that negligence of the defendant was the cause, where there are many other causes than the one alleged that might have produced the same condition. I will say here that it appears from the testimony of the plaintiff that he followed his profession as a violinist with the Philadelphia Orchestra after the injury and after the X-Ray treatments by Dr. Pfahler, the defendant, for a period from October, 1918, until April, 1919. Can we assume, therefore, that there was no irritating condition arising from the employment of his hand in playing the violin under the condition that the hand is said to have been in at that time, or that infection may not have occurred during this period of time, especially as the plaintiff was himself treating his hand by bandaging and putting on ointments?

While I have great sympathy for the plaintiff in the injury that he has sustained, under my view of the law he has failed to show that the present condition of his hand was due to the negligence of the defendant in applying the X-Ray treatment as alleged in the statement of claim. I grant the defendant's motion for non-suit. See, also, English v. Free, 205 Pa. 624; Wohlert v. Seibert, 23 Pa. Superior Ct. 213; Potter v. Warner, 91 Pa. 362; McGraw v. Kerr, 128 Pac. Repr. 870.

Nov. 30, 1921, motion to take off non-suit overruled.