**DICKERSON**

v.

**AMERICAN SUGAR REFINING
CO., Inc.**

**No. 11160.**

United States Court of Appeals
Third Circuit.

Argued Dec. 11, 1953.

Decided March 19, 1954.

Charles A. Lord, Philadelphia, Pa. (Richter, Lord & Farage, Philadelphia, Pa., on the brief), for appellant.

Harry R. Axelroth, Philadelphia, Pa. (Axelroth & Porteous, Philadelphia, Pa., on the brief), for appellee.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

This case raises the perennial problem of the "borrowed servant" and requires that we decide whether there was sufficient evidence to justify a jury finding that the nurse who treated plaintiff was, while rendering that treatment, defendant's servant.

Defendant maintains a sugar refinery in Philadelphia. In connection with the refinery, it maintains a dispensary. The dispensary is permanently staffed by a registered nurse who is a full-time employee of defendant. A doctor is in attendance at the dispensary for a few hours a day. He testified that he was retained as a "contract physician" to treat all accident cases that came in and those which had occurred in his absence and had been given first aid by the nurse. He was to administer to injured men who were defendant's employees. His testimony was to the effect that

he administered also to men injured at the refinery who were employees of third persons, but that in such cases there was a tacit understanding between himself and the stranger employer's insurance carrier that the latter would pay for such services on a fee basis.

Defendant engaged Charles Schwertners and Sons, Inc., to tear down an old stable at the refinery. Plaintiff, a carpenter, was an employee of Schwertners. While working on the stable, he ran a splinter into his hand and went to defendant's dispensary to have it removed. The nurse tried to remove it but could not and, thereupon, called in the doctor, who was then in attendance, and he removed it. Because of the danger of plaintiff's contracting tetanus, it was necessary that he be given a shot of tetanus antitoxin. This was done by the nurse, and, according to plaintiff's evidence, the jury properly could have found that it was done negligently. The testimony was conflicting as to the nurse's post-injection instructions to plaintiff, but, in any event, he returned to his work. About fifteen minutes later, he was brought back to the dispensary on a stretcher in a state of shock and was then taken to a hospital. Plaintiff's medical expert testified that, in his opinion, plaintiff's illness and his consequent disability to work as a carpenter were caused by the allegedly improper injection of the antitoxin.

After all the evidence was in, defendant moved for a directed verdict on the ground that plaintiff had not established that, while treating plaintiff, the nurse was its servant. This motion was reserved, and the court then instructed the jury, discussing the servant question and that of contributory negligence. The jury's general verdict was in favor of defendant. Plaintiff then moved for a new trial, alleging that it was error to submit the issue of contributory negligence to the jury, timely objection having been made at the trial. The court determined that excessive caution had caused it to allow the jury to pass on the servant issue and held that the question

should have been decided in defendant's favor on defendant's motion for a directed verdict. The motion for a new trial was dismissed, and this appeal followed.

■ Diversity of citizenship is the sole basis for federal jurisdiction here, and, thus, we apply Pennsylvania substantive law.

■ First, we must set the stage. As we have said, the jury was told to pass upon the servant question and that of contributory negligence, among others. It is true that there was conflicting testimony as to whether the nurse told plaintiff to remain in the dispensary so that his reaction to the injection could be observed. Assuming that she did so instruct him, he disregarded those instructions and went back to his work. This was thought such evidence of contributory negligence as to require its submission to the jury. But the trouble is that there was no evidence, from layman or doctor, that plaintiff's returning to work could have been any kind of a cause of his injuries. As to the defense of contributory negligence, it is beyond question that defendant must show, not only that plaintiff failed to exercise reasonable care for his own safety, but also that such failure legally contributed to his injury. Here, there was no evidence on the causal connection and, therefore, the matter should not have gone to the jury. Haywood v. Jones & Laughlin Steel Corp., 3 Cir., 1953, 205 F.2d 775. The result is that the case is in this posture on appeal: The jury was told to decide two questions, among others, that of master and servant and that of contributory negligence. But the latter was not a jury question. By general verdict, it found for defendant, so that we cannot tell upon which ground plaintiff lost. Hence, although the fact finder decided in favor of defendant, we must view the evidence in the light most favorable to plaintiff when we review the servant issue.

■ Pursuant to a request under Rule 36 of the Federal Rules of Civil Procedure, 28 U.S.C., defendant admitted that the nurse was in its employ on the day of plaintiff's injury. Plaintiff argues that that admission was enough to get him to the jury on the servant issue. Defendant's reply depends upon the status of the doctor. It is said that the doctor was an independent contractor. Defendant contends that, conceding, as indeed it must, that the nurse was in its employ as to matters generally, at the time when she was helping the doctor to treat persons who were not defendant's employees she was the doctor's servant and not defendant's. This view was accepted by the district court. We agree that it is a permissible view, but we think on this record it is not the sole permissible view and that the jury properly could have found that the nurse was defendant's servant.

The district court felt that the evidence on the servant issue was undisputed and, therefore, that it was a question for the court under Mature v. Angelo, 1953, 373 Pa. 593, 97 A.2d 59. It is true that the testimony on each individual factor bearing on the servant issue was largely undisputed, but we think the evidence, taken as a whole, was clearly subject to inconsistent inferences, and that is the ultimate test laid down by the Mature case, supra, 97 A.2d at page 61.

■ The law dealing with tort liability caused by the negligence of a "borrowed employee" is well settled, no matter how troublesome may be its application. We begin with the fundamental proposition that the one sought to be held is liable only if he is the master of him who was negligent. One who is in the general employ of A may, as to certain work, be transferred to the services of B so that he becomes B's servant while engaged in that work. In order to determine whether a person is the employee of A or B, the test is whether the one or the other had the right to control, not only the work to be done, but also the manner of doing it, and the person is the servant of him who has the right to control the manner of perform-

ance of the work, regardless of whether or not he actually exercises that right. Then, of course, there is a middle ground. That is, a person may be the servant of two masters, not joint employers, at the same time as to the same act, provided that service to one does not involve an abandonment of service to the other. Such is the case where the employee is transferred to carry on work which is of mutual interest to both of two employers and to effect their common purpose. The result is that, depending upon the evidence, three different conclusions are possible: The person may be the servant of A only, of B only, or of both. Factors which indicate that a person remains the servant of his original master are that the latter has the right to select the employee to be loaned and to discharge him at any time and send another in his place, that the lent servant has the skill of a technician or specialist which the performance of the work requires, that the hiring is at a daily or an hourly rate, and that the employment is for no definite period. Furthermore, there is no inference that because the general employer has permitted a division of control, he has surrendered it. None of this is new law. The opinion of Chief Justice Stern in the Mature case, supra, is a veritable mine of Pennsylvania authority and sets out most of the propositions stated above. Further support is found in Shull v. Schwartz, 1950, 364 Pa. 554, 73 A.2d 402; McConnell v. Williams, 1949, 361 Pa. 355, 65 A.2d 243; Siidekum v. Animal Rescue League of Pittsburgh, 1946, 353 Pa. 408, 45 A.2d 59; Stewart v. Manasses, 1914, 244 Pa. 221, 90 A. 574; Restatement, Agency §§ 219, 220, 226, 227 (1933).

There were these factors which would have permitted the jury to find that the nurse was defendant's servant at the critical time. The dispensary was maintained and supplied by defendant. The latter admitted that the nurse was in its general employ. The nurse testified that she was a full-time employee at the dispensary; that her work for defendant entailed taking care of and giving first aid to all accident cases that came in and, specifically, that her duties included giving tetanus antitoxin injections. Furthermore, defendant selected the nurse and certainly had the right to discharge her and substitute another; as a nurse she had the skill of a technician which the performance of the work required; and the jury could have found that her employment was for no definite period of time. From these factors, the jury could well have inferred that the nurse remained subject to the control of defendant and, thus, was defendant's servant at the critical time, as opposed to passing into the exclusive control of the doctor.

On the other hand, there was evidence that the doctor was an independent contractor. Testifying for defendant, the nurse said that when the doctor was present at the dispensary she worked under his supervision. In addition, the doctor said that he instructed the nurse to give plaintiff a test dose of tetanus antitoxin. These elements would have justified the jury in inferring that the exclusive power to control the nurse's work had passed to the doctor, thus making her solely the latter's servant.

To complete the picture, we think it could be found that both parties had some measure of control over the nurse's work. Were the jury to credit all the testimony, that result would follow. From the nurse's testimony, it could be inferred that defendant's purpose was to supply first aid to those injured at the refinery. The doctor's services were retained for the same purpose but on a more expert level and possibly on the basis of an independent contractor relationship. Therefore, his objective, assuming he was an independent contractor, was the same as defendant's. Hence, while assisting the doctor, the nurse could be found to have been acting under the supervision, actual or potential, of both defendant and doctor, since she would be carrying on work

which was of mutual interest to both and to effect their common purpose. Clearly, assisting the doctor would not necessarily involve an abandonment of her service for defendant; nor does the fact that defendant may have permitted a division of control compel the conclusion that it was given up entirely.

An essential link in defendant's case is that the doctor was an independent contractor. Arguing that he was, defendant's contention would shift the nurse from defendant's service to that of the doctor, depending upon the employment status of the patient. That is, the nurse would be defendant's servant if the patient were an employee of defendant, but the doctor's servant if the patient were an employee of a third person, since the treatment by the doctor and nurse of a total stranger could hardly be of benefit to defendant. It may well be, however, that when the nurse was treating plaintiff, her services were for the purpose of mitigating possible tort damages for which defendant might otherwise be liable.

■ Finally, we must reject plaintiff's suggestion that the ultimate test is whether or not the doctor was actually in the room at the time of the negligent act. Such a distinction misses the point and distorts the importance of the physical whereabouts of the doctor. It is the power to control, not the actual exercise of it, that answers the question. That is the rationale of the Shull, McConnell, and Stewart cases, supra. See also Powell v. Risser, 1953, 375 Pa. 60, 99 A.2d 454; Scacchi v. Montgomery, 1950, 365 Pa. 377, 75 A.2d 535. The doctor does not necessarily lose the power to control the nurse simply by stepping into the next room.

We think that the district court's original decision to allow the jury to pass upon the servant issue was correct and that the evidence would support any of the three possible results.

The judgment will be reversed and the cause remanded for a new trial.