## Cordisco v. Cole

*Charles Blasband*, for plaintiffs.
*Wright, Mauck & Spencer*, for defendant.

GROSHENS, J., April 14, 1960.—Plaintiffs instituted this action in trespass for damages allegedly caused plaintiff, Assunta Cordisco, by defendant's negligence in the performance of his professional duties as an osteopathic physician. At the close of plaintiff's case, defendant moved for a nonsuit, which was granted. Plaintiffs filed a motion to take off the nonsuit which is now before the court.

On April 15, 1957, plaintiff, Assunta Cordisco, suffered an intertrochanteric fracture of the right femur as the result of a fall in her home. She was taken to the Delaware Valley Hospital, Bristol, where she was placed under the care of defendant, Dr. Glen W. Cole.

To correct the fracture and unite the fragments of bone, Dr. Cole inserted a Badgley plate and nail. As the hospital did not have portable X-ray equipment, he made the insertion by touch and without the aid of X-ray guidance. On the day following the operation, X-rays of the femur were taken which demonstrated that the end of the nail was a sixteenth of an inch from the surface of the head of the femur.

At the time of the operation, Dr. Cole so tightened a screw on the Badgley apparatus that it prevented the outward movement of the nail in the event of bone absorption at the site of the fracture. Dr. Cole did this because of his belief there would be no absorption in this type of fracture, although he admitted there was a possibility of absorption, and because it is normal procedure in using the apparatus in this type of fracture.

Assunta Cordisco was X-rayed again on June 14, 1957, and Dr. Cole's examination of those X-rays showed that the end of the nail had gone through the head of the femur and into the acetabulum to a distance of approximately three-eights of an inch. This movement was caused by absorption of the bone at the site of the fracture.

Dr. Cole saw Assunta Cordisco in July and in September. She was also under the care of Dr. Soebel, a general osteopathic physician. There was conflicting testimony as to Dr. Cole's orders or instructions to Assunta Cordisco to report to Dr. Soebel for relief from pain during this time and as to his instructions to plaintiff as to whether or not she was to report back to him.

Following Assunta Cordisco's visit with Dr. Cole on September 19, 1957, she never returned to his care and after four visits to Dr. Soebel which did not give her any relief from the pain she was suffering, she saw Dr. Frederick E. Stiepan, an orthopedic surgeon, who removed the nail by a surgical operation.

The only issue before this court is whether the trial judge erred in entering the nonsuit.

Plaintiffs predicated recovery on (1) an act of commission by the insertion of the Badgley apparatus so as to allow its protrusion following absorption of the femur bone at the site of the fracture, and on (2) an act of omission in not rendering plaintiff the proper post-operative care.

The authority in Pennsylvania is well established to the effect that ". . . no presumption or inference of negligence arises merely because the medical care or surgical operation terminated in an unfortunate result which might have occurred even though proper care and skill had been exercised, and where the common knowledge or experience of laymen is not sufficient to warrant their passing of judgment. In such cases the doctrine of res ipsa locquitur or of exclusive control may not be invoked, and expert testimony in support of the plaintiff's claim is an indispensable requisite to establish a right of action": Robinson v. Wirts, 387 Pa. 291, 295 (1956), and the authorities cited therein.

In Scacchi v. Montgomery, 365 Pa. 377 (1950), which involved an action against a surgeon for negli-

gence in performing an operation and in post-operative care of the patient, the court, in upholding the nonsui' said: "The plaintiff had the burden of proving Di Montgomery's negligence and in a case such as this it could be proved only by expert testimony to establish negligence in the operation or a procedure which was not in accord with standard medical practice or negligence in his treatment of the patient after the operation; . . ."

The only evidence of negligence produced by plaintiff in the Scacchi case, supra, was the testimony of defendant, Dr. Montgomery, who was called for cross-examination, and several members of the patient's family. At page 380, the court said, "Dr. Montgomery's testimony disclosed no negligence; and being credible and not rebutted was binding upon plaintiff: . . ."

In the present case, as to the alleged negligence at the time of the operation, there were only two expert witnesses, Dr. Cole, who was called as for cross-examination, and Dr. Stiepan. Neither Dr. Cole nor Dr. Stiepan testified as to the existence of any generally accepted professional standards in this type of operation, nor of the failure of Dr. Cole to follow any generally accepted professional standards in this type of operation.

Plaintiffs, however, contend that Dr. Stiepan's testimony fulfilled this requirement, particularly on the question of Dr. Cole's failure to provide for bone absorption. A review of the notes of testimony, particularly page 115, shows that while Dr. Stiepan testified that bone absorption could be expected in most all such situations, he offered no testimony as to whether or not such a contingency, under generally accepted professional standards, should have been provided for. Therefore, as to the first allegation of negligence,

neither of the two essential elements for establishing such a cause of action have been established, i.e., expert testimony as to the standard of care required of a doctor in such an operation and expert testimony as to defendant's deviation from such standard.

The second allegation of negligence set forth by plaintiff is the act of omission as to post operative care. There are really two grounds for this allegation. The one is that Dr. Cole did not remove the nail that was causing plaintiff pain and suffering and the other is that he failed to provide any relief for her until such time as it was removed.

As to the first ground, Dr. Cole made no admissions which would aid plaintiffs in establishing their case. Dr. Stiepan only testified that if he were confronted with such a situation, he would not remove the nail without first being very sure that the bone was healed, for if the nail were removed prematurely, the bones would collapse and would not heal.

Further, Dr. Stiepan never testified as to when he would have removed the nail or as to when generally accepted medical standards would dictate that it be removed, but he only testified that at the time he removed the nail, he found it desirable to be done. Therefore, plaintiffs have failed to meet the burden of establishing this phase of their case within the rule of the Robinson case, supra.

Plaintiffs further contend, however, that there is a second ground on which they base their allegation of post-operative negligence and that is Dr. Cole's failure to instruct Assunta Cordisco to return to her family doctor for follow-up and care. They contend that there is expert medical testimony on this point, i.e., the testimony of Dr. Cole himself. Dr. Cole testified that he instructed plaintiff to return to her family doctor following the operation and further testified that it would

have been unreasonable of him not to so instruct a patient. Assunta Cordisco testified that she was never so instructed.

Under the general rule as set forth above, there must be expert testimony both as to the degree of care and the deviation from such standard. However, there is an exception to this rule set forth by the court in the Robinson case, supra, at page 297:

"The only exception to this otherwise invariable rule is in cases where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of the ordinary experience and comprehension of even non-professional persons . . ."

This exception is certainly applicable here where there is expert testimony as to the standard of care required of a doctor under the circumstances and where the deviation from the standard is the only question which the jury has to consider without having the aid of expert testimony. Whether or not defendant did or did not tell plaintiff to report to her family doctor, does not require any expert medical knowledge.

Finding, therefore, that the nonsuit should not have been granted as to the last mentioned issue, we enter the following:

### Order

And now, April 14, 1960, it is ordered, adjudged and decreed that plaintiffs' motion to remove the nonsuit is granted as to the allegation of negligence on the part of defendant in failing to instruct plaintiff to return to her family doctor following the operation and is dismissed as to his alleged negligence in performing the operation and in failing to remove the nail.