## Decker v. Pohlidal

*Laurence H. Eldredge* and *William C. Cassebaum*, for plaintiff.

*John O'Brien, N. Seidel* and *Fox & Oldt*, for defendants.

BARTHOLD, P. J., July 11, 1960.—Plaintiff, William Decker, filed a complaint in trespass to recover damages for personal injuries and permanent disability resulting from the alleged negligence of defendants, Doctors Stanley J. Pohlidal and Donald K. Coleman, in diagnosing and treating plaintiff. No answer has been filed by defendants.

The case is before the court on a petition filed by plaintiff under Pa. R. C. P. 4019(*b*) for an order directing defendant doctors to answer certain questions asked of them during discovery proceedings by oral depositions.

The depositions of defendant doctors were taken in aid of the preparation or trial of plaintiff's case [1] pursuant to Pa. R. C. P. 4007(*a*), which provides:

---

[1] Plaintiff having filed his complaint, discovery was not needed in aid of the preparation of the pleadings.

"(a) Any party may take the testimony of any person, including a party, for the purpose of discovery by deposition upon oral examination or written interrogatories of the identity and whereabouts of witnesses . . . the deponent may also be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the action and will substantially aid in the preparation of the pleadings or the preparation or trial of the case."

The rule requires that the matters concerning which inquiry is made must not only be relevant to the subject matter involved in the action but also of substantial aid in the preparation or trial of the case.

It is difficult to determine, at the deposition stage, what matters meet these requirements because of the inadequate background against which to make a decision.

In Goodrich-Amram Procedural Rules Service, §4007(a) 18, page 118, it is suggested that, in deciding what matters are relevant, "The best that the court can do is to see whether there is any basis on which the proposed matters *might* be relevant at the trial. If there is no conceivable basis of relevancy, then the discovery should be restrained. If there is any conceivable basis of relevancy, the discovery should be permitted."

The courts have held that the inquirer is not required to justify complete relevance in advance,[2] and that doubts are to be resolved in favor of relevancy,[3] but the courts have also held that relevancy is not to be determined on the assumption that by possibility

[2] DeSimone, Admrs., v. City of Phila. (No. 1), 78 D. & C. 433.

[3] Regency Clothes, Inc., v. Progressive Clothes, Inc., 78 D. & C. 450; DeSimone, Admrs., v. City of Phila. (No. 2), 79 D. & C. 337; Widershain v. Zurich Gen. Acc. & Liab. Ins. Co., Ltd., 83 D. & C. 486.

an answer might be relevant.[4] This court is already committed to the proposition that the Supreme Court Rules of Civil Procedure relating to discovery should receive a liberal interpretation.[5]

In Goodrich-Amram Procedural Rules Service §4007 (a) 19, pages 121 and 122, it is stated that, the answer to what is meant by substantial aid ". . . can probably be given best by exclusion rather than by affirmative definition. It does *not* mean that the discovery need be merely useful or desirable to the inquirer. It is not sufficient for the inquirer to say, 'It will help me to prepare my case more easily if I have this information from my opponent.' . . . On the other hand, it does not mean that the discovery is absolutely essential or necessary to the inquirer. He is not required to say, 'Without this information, I will fail completely in my proof.' . . . The standard falls midway between mere curiosity and absolute necessity."

Defendant, Doctor Pohlidal, a specialist in orthopedics, at the direction of counsel, refused to answer the following questions:

1. "Q All right. Now, Doctor, let me show you another X-ray, which I produce, and which for the purposes of identification I will merely refer to as an X-ray taken by a Dr. Avery, S. Donald Avery, here in Easton, and I believe the date of it is September 2, 1958. Will you look at this X-ray and tell me what it reveals?"

2. "Q Is it correct to state that any force which is violently applied to the lower end of the femur may result in a fracture of the neck of the femur or a fracture of the acetabulum?"

---

[4] Klosterman et ux. v. Clark, 78 D. & C. 263; Fetterolf et ux. v. Levick, etc., 80 D. & C. 523; Brecht et vir. v. Phila., 81 D. & C. 130; Hainsworth v. Mount, 81 D. & C. 181.

[5] Knappenberger v. Feldman, 6 D. & C. 728, 34 North 57.

3. "Q . . . And if you have a history of a severe traumatic injury, would that be likely to result in the head of the femur being driven against the acetabulum?"

4. "Q Well, now, is it not true that when people fracture their hips because of falling, it's because there has been a force transmitted up into that hip joint?"

5. "Q Is not an intertrochanteric fracture of the neck of the femur the most commonly encountered type of fracture of the neck of the femur?"

6. "Q Well, then I'll ask you, Doctor, as a fact: According to the medical statistics is not an intertrochanteric fracture of the neck of the femur encountered four or five times as frequently or more frequently than any other type of fracture of the neck of the femur?"

7. "Q Well, now Doctor, will you tell me what are the symptoms of a fracture of the neck of the femur?"

8. "Q Well, Doctor, let me ask you this: The standard textbooks all state what the symptoms of a fracture of the neck of the femur are, don't they?"

9. Q If there is prompt, proper treatment of an intertrochanteric fracture of the neck of the femur you generally get good results, do you not?"

In question 1 Doctor Pohlidal was asked to look at an X-ray taken by Doctor Avery in Easton on September 2, 1958, and state what it revealed. The question is relevant and the answer will be of substantial aid in the preparation or trial of the case.

During the course of the discovery proceedings, Doctor Pohlidal admitted that he never ordered X-rays of plaintiff's left or right hip or of the neck of the right femur. Plaintiff, in paragraph 4 of the complaint, alleges that plaintiff did have fractures in these areas, and in paragraph 26 alleges further that the X-ray in question revealed these fractures. As de-

fendants have filed no answer to plaintiff's complaint, plaintiff is without knowledge as to whether there will be a controversy as to what this X-ray reveals. If Doctor Pohlidal testifies that the X-ray taken by Doctor Avery shows hip fractures, plaintiff will have obtained an admission. If, on the other hand, Doctor Pohlidal testifies that the X-ray shows no hip fractures, plaintiff will have ascertained that there will be a controversy as to what is shown on this X-ray. In either event, an answer to the question will substantially aid in the preparation or trial of the case.

During the discovery proceedings, Doctor Pohlidal testified that he was accustomed to look at X-rays and that he looked at all the X-rays which were taken at the Easton Hospital. Doctor Pohlidal also testified as to what these X-rays revealed. In the circumstances there can be no question but that Doctor Pohlidal was qualified to read X-rays and, therefore, qualified to read Doctor Avery's X-ray.

While it is true that the X-ray taken by Doctor Avery was not properly identified in that the inquirer did not disclose when it was taken and whether it was an X-ray of plaintiff, these are all matters which will have to be proved at the trial before Doctor Pohlidal may be examined with regard to it. We are here dealing with discovery, not trial. Receipt of this testimony in discovery proceedings does not mean that it will be received at the trial without the required identifying proof.

The objection to question 1 is overruled.

Defendant's objections to questions 2 to 9, inclusive, must be sustained. On the subjects of inquiry, plaintiff already has all the knowledge or means of knowledge he needs or can get it adequately without discovery. Answers to questions 2 to 9, inclusive, will not provide plaintiff with information which will sub-

stantially aid him in the preparation or trial of the case within the meaning of Pa. R. C. P. 4007.

We recognize, of course, that knowledge of the facts is no longer an automatic barrier to discovery and that the criterion now is, will the discovery substantially aid the inquirer?

In Goodrich-Amram Procedural Rules Service, §4007(a)26, pages 137, 138, it is stated ". . . that the problem of the existence of 'substantial aid' in cases where matter is known to the inquirer should be solved on the basis of the quantum of knowledge of the facts. This is based on the equitable principle that both parties should have equal access to relevant information for the preparation of the pleadings or preparation for trial. The same principle of interpretation must be applied here. Each party should have discovery of relevant facts, within the general limitations of these Rules, unless he already has all the knowledge or means of proof he needs, or can get it adequately without the discovery proceedings which he is requesting. If he has this, then the discovery will not substantially aid him. To the contrary, if denial of the discovery will leave the party without adequate knowledge of necessary facts, and without reasonable assurance that he can find these facts from outside sources, the discovery should be allowed. If this is the situation, the discovery will certainly be of substantial aid."

In the case at bar the inquirer has not shown that his knowledge of the subject matter covered by the foregoing questions or his means of proof thereof are inadequate to enable him to prove his claim and that he needs more information to prepare himself adequately for trial. The nature of the questions themselves indicates the contrary. Both parties have equal access to the information sought to be elicited. This is not a case where the person interrogated has unique

information which plaintiff may not be able to obtain on his own. How then can it substantially aid plaintiff?

It is obvious from the type questions propounded that plaintiff is not seeking discovery but is actually attempting to subject defendant-doctor to a complete cross examination in advance of trial before a court and jury. This may be useful or desirable to the inquirer but it does not meet the requirement of "substantial aid," as defined in Goodrich-Amram Procedural Rules Service §4007(a), pages 121, 122, supra: "It is still the rule in Pennsylvania that neither side is entitled to a 'script for the trial' from the adversary. . . . Clearly, the phrase 'substantially aid' is a limiting clause": Goodrich-Amram Procedural Rules Service §4007(a)17, page 120.

Plaintiff's counsel, at page 7 of his brief, contends that questions 2 to 8, inclusive, "are fundamental questions designed to elicit facts from the doctor as to what he learned in medical school and what he has learned in his years of practice as an orthopedic specialist." A similar contention might be made as to question 9. If this was the purpose of the questions, discovery on these matters is unnecessary for plaintiff has admitted of record "that Doctor Pohlidal is a specialist in orthopedics." Since he is such practitioner "(. . . the law presumes) that defendant possesses the ordinary degree of skill of persons engaged in the same profession": Hodgson v. Bigelow, 335 Pa. 497, 510.

Furthermore, paragraph 29(e) of the complaint charges that Doctor Pohlidal was negligent, "in not making correct diagnosis and in not administering proper care and treatment to the plaintiff in the light of defendant's specialized knowledge as an orthopedist." Doctor Pohlidal is not charged with lack of proper *knowledge* as an orthopedist but rather with failure to employ the specialized knowledge which plaintiff admits Doctor Pohlidal possessed. In the cir-

cumstances, plaintiff does not need discovery as to what Doctor Pohlidal learned in medical school or in his practice as an orthopedic specialist.

" 'Malpractice consists of a negligent or unskilful performance by a physician of the duties which are devolved and incumbent upon him on account of his relations with his patients, or of a want of proper care and skill in the performance of a professional act' ": Hodgson v. Bigelow, 335 Pa. 497, 504.

Proper skill is measured by accepted medical standards, regard being had to the advanced state of the profession at the time: McCandless v. McWha, 22 Pa. 261, 268, 269; Donaldson v. Maffucci, 397 Pa. 548, 554. Whether or not defendant doctors met this standard is judged by what they did in the instant case: Scacchi, admr., v. Montgomery, 365 Pa. 377, 379.

Plaintiff has the burden of proving negligence on the part of defendant-doctors and this can be proved only by expert testimony establishing defendant-doctors' departure from standard medical practice, except in the rare case where the common knowledge or experience of laymen is sufficient to warrant their passing judgment: Robinson v. Wirts, 387 Pa. 291, 294, 295.[6]

Defendant's objections to questions 2 to 9, inclusive, are sustained for the reasons hereinabove stated.

Defense counsel contends that his objections should be sustained on the theory that Doctor Pohlidal cannot be asked by plaintiff to express his *expert opinion* on

---

[6] See also Donaldson v. Maffucci, 397 Pa. 548, 554; Powell v. Risser, 375 Pa. 60; Scacchi, Admr., v. Montgomery, 365 Pa. 377; Bierstein v. Whitman, 360 Pa. 537; Tremaine, Exrx., v. H. K. Mulford Co., 317 Pa. 97; Nixon et ux. v. Pfahler, 279 Pa. 377; Stemmons v. Turner, 274 Pa. 228; DeLong v. Delaney, 206 Pa. 226; Williams v. LeBar, 141 Pa. 149; Wohlert v. Seibert, 23 Pa. Superior Ct. 213; Wigmore on Evidence (3rd ed.), vol. VII, §2090, page 453.

any matter. In support of this contention counsel cites the case of Penna. Co. for Ins. on Lives and Granting Annuities v. Philadelphia, 262 Pa. 439, wherein, at pages 441, 442, Justice Simpson stated:

"The process of the courts may always be invoked to require witnesses to appear and testify to any *facts* within their knowledge; but no private litigant has a right to ask them to go beyond that. . . . But the private litigant has no more right to compel a citizen to give up the product of his brain, than he has to compel the giving up of material things. In each case it is a matter of bargain, which, as ever, it takes two to make, and to make unconstrained."

We cannot and do not sustain defendant's objections on this ground. The foregoing expert witness rule is inapplicable where defendant-doctor, himself an expert, is on trial for malpractice. In such situation no sound distinction can be drawn between questioning defendant-doctor as to fact and questioning him concerning his opinion, since fact and opinion are inextricably intermingled on the fundamental issue as to whether defendant-doctor departed from accepted standards in diagnosing and treating plaintiff's injuries.

Doctor Pohlidal refused, at the direction of counsel, to answer the following questions:

10. Q And, doctor, when a man has been in a severe automobile accident and he is brought in by an ambulance and he can't move his legs, isn't it your general practice to keep him immobilized for a few days, to see what the situation is?"

11. Q Doctor, have you had any other case in which a person has been involved in a serious automobile accident and has been brought in, unable to move either leg, and you, within 48 hours of the accident, you have ordered Hubbard tank treatments?"

Question 10 is an inquiry as to Doctor Pohlidal's "general practice." The question at issue is whether Doctor Pohlidal in his diagnosis and treatment of plaintiff followed standard medical practice. His "general practice" is not at issue.

Question 11 is an inquiry as to what Doctor Pohlidal did in other cases.

Both questions are objectionable under the res inter alios rule of exclusion which deals with the superficial relevancy of occurrences at other times similar to the occurrences in issue.

It is a general rule "that the commission of a particular act by a certain person, or the existence of certain conditions, cannot be proved by showing the commission of a similar act or the existence of similar conditions at another time . . .": Penna. Evidence, Henry, § 31.

"Nor may an act ordinarily be disproved by showing a general course of conduct otherwise. The rule is particularly applicable when the evidence consists of transactions between strangers to the action in question": Vol. 14 P. L. E. §101, pages 386, 387.

"It is an established rule, applicable alike to civil and criminal inquiries, that the commission of the act charged cannot be proved by showing a like act to have been committed by the same person. The rule is thus stated in Stephen's Digest of the Law of Evidence, Article 10: 'The fact which rendered the existence or nonexistence of any fact in issue probable by reason of its general resemblance thereto, and not by reason of its being connected therewith, is deemed not to be relevant to such fact' . . . 'That a doing of one act is in itself no evidence that the same or a like act was again done by the same person,' has been so often judicially repeated that it is commonplace' ": Veit v. Class & Nachod Brewing Co., 216 Pa. 29, 33, 34.

The fact that a person has acted in a certain way on one or even on numerous occasions is irrelevant on the question of how he acted on a given occasion.[7]

Defendant-doctors were examined at length as to their diagnosis and treatment of plaintiff's injuries. With the exception of the two instances hereinafter discussed, no objection was made to full inquiry on these matters. None could properly be made: Knappenberger v. Feldman, 6 D. & C. 2d 728, supra, 732. In the circumstances it is difficult to perceive how further discovery would be relevant and of substantial aid to plaintiff in the preparation or trial of the case within the meaning of Pa. R. C. P. 4007.

Defendant's objections to questions 10 and 11 are sustained.

Defendant, Doctor Coleman, a neuropsychiatrist, refused, at the direction of counsel, to answer the following questions:

12. "Q And what other causes did you state as possible causes . . .?"

13. "Q You said you did that verbally, and will you just state what other possible diagnosis you expressed verbally and to whom?"

14. "Q . . . Do you agree with me a fractured hip causes a limitation of motion?"

Questions 12 and 13 are directed to the diagnosis made by Doctor Coleman of plaintiff's inability to walk. Inasmuch as he had testified that "a somatic delusion . . . had to be considered" and "could have been one of the causes . . ." and further testified that

---

[7] Baker v. Irish, 172 Pa. 528; Jamestown Iron & Metal Co. v. Knofsky, 302 Pa. 483, 486; Wyatt v. Russell, 308 Pa. 366, 369; Roney v. Clearfield County Grange Ins. Co., 332 Pa. 447; Keiter v. Miller, 111 Pa. Superior Ct. 594, 596; Klein et ux. v. Weissberg, 114 Pa. Superior Ct. 569, 574; Baumeister v. Baugh & Sons Co., 142 Pa. Superior Ct. 346.

he had stated in verbal conversation to Doctor Pohlidal another cause or causes, it was entirely proper to interrogate him as to the other cause or causes he had verbally expressed. "Defendants' diagnosis and treatment . . . are the very heart of plaintiff's case:" Knappenberger v. Feldman, 6 D. & C. 2d 728, supra, 732. Accordingly, any diagnosis made by Doctor Coleman, whether verbal or written, would be relevant and of substantial aid in the preparation or trial of the case within the meaning of Pa. R. C. P. 4007.

Defendant's objections to questions 12 and 13 are overruled.

Objection to question 14 was properly taken. The question had been answered by Doctor Coleman, when in response to the prior question, "Well, doctor, a fractured hip will cause a limitation of motion, won't it?" the doctor answered, "All right." The dictionary definition of "all right" is "quite correct." In the circumstances, it is unnecessary to decide whether the question was relevant and of substantial aid in the preparation or trial of the case.

Defendant's objection to question 14 is sustained.

### Order

And now, July 11, 1960, the objection of defendant, Doctor Pohlidal, to question number 1 is overruled and defendant, Doctor Pohlidal, is ordered to answer question number 1; the objections of defendant, Doctor Pohlidal to questions numbers 2 to 11, inclusive, are sustained; the objections of defendant, Doctor Coleman, to questions numbers 12 and 13 are overruled and defendant Doctor Coleman is ordered to answer questions 12 and 13; the objection of defendant, Doctor Coleman, to question number 14 is sustained.