## Burke, Executor, v. Kennedy, Appellant.

*Evidence—Witness—Cross-examination—Contradiction—Credi-bility—Improbability—Interest of witness—Acts of April 15, 1869, P. L. 30, and May 23, 1887, P. L. 158.*

1. Under the Acts of April 15, 1869, P. L. 30, and May 23, 1887, P. L. 158, a party calling his opponent as for cross-examination, is not concluded by his testimony.

2. Where one so called is not contradicted by facts and circumstances appearing in the testimony, his statement will be taken as verity.

3. But the party calling his opponent is always at liberty to prove the facts to be otherwise than the witness represented them, and the witness may be contradicted by circumstanecs as well as by statements of others contrary to his own.

4. There may be such a degree of improbability in the statements themselves as to deprive them of credit, however positively made, and the jury may reject them although uncontradicted by direct evidence.

5. The interest of a witness so called must be considered as affecting credibility.

6. If the calling of such witness is necessary as being the only living person who could testify as to the essential question at issue, such circumstance is to be considered.

7. If the testimony of the witness is full of contradictions and her story improbable, and it is shown that she has a substantial interest in the result of the suit, and that she is the only living person with knowledge of the transaction involved, it would be error for the court to accept her statement as verity, and not submit her testimony to the jury.

Argued April 13, 1926.   Before MOSCHZISKER, C. J.,
FRAZER, WALLING, SIMPSON, KEPHART, SADLER and
SCHAFFER, JJ.

Appeal, No. 87, Jan. T., 1926, by defendant, from judg-
ment of C. P. Luzerne Co., July T., 1921, No. 552, on
verdict for plaintiff in case of Patrick Burke, Executor
of Estate of Bridget Martin, deceased, v. Anna Kennedy.
Affirmed.

Assumpsit for money alleged to have been converted
to defendant's use.   Before JONES, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $3,714: see 24
Luz. Leg. Reg. 49.   Defendant appealed.

*Error assigned* was refusal of defendant's motion for
judgment n. o. v., quoting record.

*Richard B. Sheridan,* with him *M. F. McDonald,* for
appellant.—There is no testimony whatever in the rec-
ord which in any way contradicts the testimony of Mrs.
Kennedy that she drew the money out of the bank and
gave the same to her sister in the hospital, and that her
sister then gave her the $150 remaining in the bank as
compensation for her services.   The plaintiff had the
right, under the act of assembly, to contradict the testi-
mony of Mrs. Kennedy made part of his case, but he did
not do so.   He therefore gave her testimony credibility
and could not ask the jury to disbelieve it: Dunmore v.
Padden, 262 Pa. 436; Krewson v. Sawyer, 266 Pa. 284;
Young v. Hipple, 273 Pa. 439; Walkinshaw's Est., 275
Pa. 121; Bowser v. Power Co., 267 Pa. 483; Felski v.
Zeidman, 281 Pa. 419; Stroh v. Holmes, 83 Pa. Supe-
rior Ct. 129.

*Frank A. McGuigan,* with him *A. C. Campbell,* for ap-
pellee.—It is only where the testimony deduced by cross-
examination is not disputed that it must be taken as

true: Young v. Hipple, 273 Pa. 439; Dunmore v. Padden, 262 Pa. 436; Krewson v. Sawyer, 266 Pa. 284.

OPINION BY MR. JUSTICE SADLER, May 3, 1926:

Bridget Martin, an elderly widow, died on February 5, 1921, and, by will, Burke, the present plaintiff, was appointed executor of the estate. Investigation disclosed a deposit in her name of $4,700 in the First National Bank of Wilkes-Barre, and the ownership of some furniture. Later, it was discovered that a property formerly possessed by testatrix had been sold in 1920, and the purchase price paid in cash to the decedent. Of this amount, it was learned that $3,150 had been placed in the Second National Bank by her sister, Mrs. Kennedy, the defendant, to the order of "Mrs. Bridget Martin or Mrs. Anne Kennedy," and that the latter had withdrawn, on February 1, 1921, all but $150, which small sum was claimed as a gift. Defendant insisted the entire balance was delivered to the decedent upon request, setting forth in her affidavit of defense that this amount was handed over in the presence of witnesses, and placed in the bedding by her sister, then a patient in the Mercy Hospital, where she died four days later. As to the ultimate disposition of the cash, all knowledge was denied by defendant, nor did she make inquiry after the death of Mrs. Martin as to its whereabouts, though interested to the extent of one-fifth in the assets of the estate.

The money in question was traced to the bank, where it was deposited and subsequently withdrawn by Mrs. Kennedy. It became necessary for the plaintiff to show, in the suit brought by the executor for its recovery, that the fund placed in the Second National Bank had been the property of the decedent. For this purpose the defendant was called for cross-examination before the arbitrators, who first heard the case, and later, at the trial, on appeal, before the common pleas. She then narrated the circumstances as to the receipt of the money, and its

subsequent repayment. As she was the only living person present when the cash was alleged to have been returned, her statement as to this could not be expressly contradicted, but all of the facts surrounding the transaction were developed, and these, with other testimony, so clearly threw doubt on the truthfulness of the story told that the court properly held her evidence as a whole was a matter for the jury to pass upon.

The sole legal question raised on this appeal is whether plaintiff was bound by defendant's statement on cross-examination that she had paid over the entire sum to Mrs. Martin four days before the latter died, when decedent was in most serious physical distress. Before discussing the legal principles involved, we may examine briefly the testimony of Mrs. Kennedy, and indicate how it was contradicted by proof of other facts and circumstances. Defendant admitted that $3,150 was given her to place in a joint account on January 11th. The money was not taken to the bank where Mrs. Martin kept her other funds, but to a second institution, and there deposited, subject to the order of either party. Mrs. Kennedy stated the card required on the opening of a credit in this form was signed by Mrs. Martin twice, but the jury was plainly justified in finding this to be untrue, and that the name of the decedent was placed thereon by defendant or her daughter, the decedent being at the time many miles distant, and also unable to write her name. The withdrawal slip on February 1st was executed alone by defendant, or her daughter, and the former received the cash, which, according to the affidavit of defense, was later handed to the sick woman in the presence of witnesses. At the trial, the reading or signing of this affidavit was flatly denied by defendant. According to her narrative, she made inquiry of a nurse and the doctor as to the location of the money, but both parties contradicted this statement. The hospital attendants testified that, although they changed the bed clothing at least twice each day, no roll of bills as de-

scribed was observed by them. It is further significant that no investigation was made by defendant to determine what had become of the cash, though she was with her sister frequently until the evening preceding the death, nor did she ask concerning it thereafter, though acquainted with the fact that a considerable portion of the estate belonged to her. Still more suggestive is the denial of any knowledge of the fund, made in answer to an express inquiry by counsel for the estate, and her reply that the item of $4,700 and $13, which latter she had found in her sister's purse, constituted all the property known to have been possessed by the decedent. It was not until weeks after, when confronted with possible prosecution, that the information as to the $3,150 was forthcoming, and the statement then made that the money had been given back. The narrative of the defendant when called for cross-examination, and again when testifying in her own defense, is so full of contradictions, and the story told so improbable, under the circumstances, that the court would have been in error in holding that the unsupported declaration of the return of the $3,000 was to be taken as true beyond dispute.

Whatever the rule may have been as to the contradiction of adverse witnesses called for cross-examination prior thereto, it was expressly declared in this State by the Act of April 15, 1869, P. L. 30, section 2, that the party calling his opponent to give evidence "shall not be concluded thereby, but may rebut it by counter testimony." This made possible the offer of witnesses to show the making of contradictory statements: Brubaker v. Taylor, 76 Pa. 83. The Act of 1887 (May 23, P. L. 158), likewise provided that the one calling the adverse party "shall not be concluded by his testimony." This legislation seems first to have been the subject of discussion by this court in Dunmore v. Padden, 262 Pa. 436, where it was said, in part (p. 439), "the plaintiff was not concluded by the testimony of the defendant in

this case, but was at liberty to call witnesses to impeach his testimony, and to show, if possible, that his statements were not true." It has been properly held that where the one called is not contradicted by facts or circumstances appearing in the testimony, the statement made will be taken as verity: Mathey v. Flory Milling Co., 283 Pa. 331; Young v. Hipple, 273 Pa. 439; Felski v. Zeidman, 281 Pa. 419; Krewson v. Sawyer, 266 Pa. 284. And the same has been said where the facts relied upon to show the untruth are insufficient to raise a real doubt as to the correctness of the testimony given: Walkinshaw's Est., 275 Pa. 121.

But the party calling his opponent is always at liberty to prove the facts to be otherwise than the witness has represented them: Mississippi Glass Co. v. Franzen, 143 Fed. 501; 5 Chamberlayne on Ev. 3744; 40 Cyc. 2768; 28 R. C. L. 643; note, 6 A. & E. Ann. Cases 711; note, Ann. Cases 1914 B 1122. "There may be such a degree of improbability in the statements themselves as to deprive them of credit, however positively made": Elwood v. Western Union Tel. Co., 45 N. Y. 549, 553; Kelly v. Jones, 290 Ill. 375, 125 N. E. 334; Lasher v. Colton, 225 Ill. 234, 80 N. E. 122. And the witness "may be contradicted by circumstances as well as by statements of others contrary to his own": Elwood v. Western Union Tel. Co., supra. "It cannot be said, as a matter of law, that the jury is bound to accept evidence as true, although not contradicted by direct evidence. Thus, where there is some intrinsic improbability in the statements of the witness, and he has shown himself unworthy of credit by his attempt to falsify a collateral transaction involved in the suit, the jury may reject his testimony as incredible, although he is not impeached or contradicted by direct evidence": 28 R. C. L. 661; 40 Cyc. 2584.

Not only are the proven circumstances to be examined here, but the interest of the defendant in the result of the litigation must also be considered. "A witness,

though unimpeached, may have such an interest in the question at issue as to affect his credibility. Thus, where the testimony proceeds from a person who would be guilty of a criminal fault unless he vindicated himself from the presumption arising from the transaction, a question of credibility is presented for the jury, and they may disregard such testimony": 28 R. C. L. 661. In the instant case, the defendant, if her story was found untrue, became responsible for the judgment recovered, and also liable to prosecution for misappropriation of the funds of the estate.

It is further to be noted that the calling of Mrs. Kennedy was made necessary by the situation of the plaintiff, as she was the only living person who could testify that the $3,150 deposited in the bank was that of the decedent. Mrs. Kennedy was heard again in her own defense, and then fully examined in chief. The rule that a party cannot discredit his own witness does not apply where circumstances make necessary the production of one who is adverse, and who is subsequently called and heard in support of his own contention: Morris v. Guffey, 188 Pa. 534.

The record in this case has been read with care, and we are convinced that the truthfulness of the narrative of the defendant was a question for submission to the jury. Not only was she expressly contradicted in practically every material fact testified to,—excepting, of course, the alleged repayment in cash to Mrs. Martin,—but her evidence as a whole was so inconsistent, and the transaction as detailed so improbable, that the jury could well find from all of the attending facts and circumstances that the witness was not credible.

The judgment is affirmed.