## Pfordt, Appellant, *v.* Educators Beneficial Association.

Argued May 3, 1940.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT,
JJ.

*John B. Nicklas, Jr.,* of *McCrady, McClure, Nicklas
& Hirschfield,* for appellant.

*James Grove Fulton,* with him *A. Ernest Evans* and
*Alter, Wright & Barron,* for appellee.

OPINION BY RHODES, J., June 24, 1940:

Plaintiff, Minnie Pfordt, on March 16, 1925, became a
member of defendant association which issued to her
a contract providing for the payment of accident and
sick benefits. On September 1, 1937, plaintiff brought
an action in assumpsit to recover sick benefits under the

contract for an illness from January 24, 1937, to August 15, 1937. Defendant filed an affidavit of defense to the statement of claim. At the trial on May 15, 1939, plaintiff presented in open court an amended statement of claim which changed the date of the commencement of plaintiff's illness from January 2d, as stated in the original statement of claim, to January 24, 1937. The amendment was allowed. The jury returned a verdict in favor of defendant. Plaintiff filed motions for judgment n. o. v. and for a new trial. They were refused by the court below. Judgment was entered upon the verdict, and plaintiff has appealed.

Plaintiff's claim was based upon an illness which confined her in the Magee Hospital, Pittsburgh, continuously from January 24, 1937, to August 15, 1937, during which period she was suffering from an hour-glass stomach and adhesions, which necessitated an operation on January 27, 1937. She claimed benefits for 26 weeks in the sum of $635. The pertinent provisions of the contract are printed in the margin. [1]

---

[1] "Article 9.

"Section 2. Sickness: (a) Benefits shall be paid only for such diseases as are common to both sexes, and shall not be paid for illness contracted prior to, or within, sixty days of the date of the Certificate of Membership, neither shall they be paid to the same person in the event of the recurrence of the same disease within a period of one year from the date of the termination of the prior attack. Illness affecting the generative organs, male or female, shall not be considered as being 'common to both sexes.'

"(b) Total Benefits: $10.00 for the first week, and $25.00 per week thereafter, for a period not to exceed 26 weeks, including the first week, during the time the applicant was continuously confined to the house, and visited therein by a registered physician at least once each week by reason of said illness, and wholly and continuously prevented from performing any and every kind of duties pertaining to his or her profession, or other occupation, labor or business, provided that said illness shall have been continuous for a full week. Benefits for the first week, under this clause, shall be increased to $12.00 if the annual dues are paid in advance."

The defense was that the illness for which plaintiff claimed sick benefits was either "a recurrence of the same disease within a period of one year from the date of the termination of the prior attack," which is one of the exceptions of article 9, §2 (a), of the contract, or was merely a continuation of an illness for which the maximum payments, to wit, twenty-six, had already been made by defendant. At the trial plaintiff was the only witness who testified in her behalf, and was also the only witness, she having been called as on cross-examination by defendant, to testify for the defense.

The contract was offered in evidence by plaintiff and received without objection. This, together with the testimony of plaintiff, and certain formal averments in the statement of claim, which were admitted or not denied in the affidavit of defense, constituted the evidence submitted to the jury. Plaintiff testified that on January 24. 1937, she became suddenly ill in the Magee Hospital, and was obliged to undergo an operation three days later. She also testified that she was continuously confined to the Magee Hospital from January 24, 1937, to August 15, 1937, during which time she was visited by a registered physician at least once a week; and that during this period she was wholly and continuously prevented from performing any and every kind of duties pertaining to her profession, occupation or business. On direct examination she also made this statement: "Q. How often during that period of time [January 24, 1937, to August 15, 1937] were you visited by a physician? A. Well, Mr. Fulton, Dr. Cashman saw me in all 228 days, and sometimes three and four times a day; but I know 228 days he saw me ...... I had three nurses in the 228 days." On cross-examination plaintiff testified that she took sick on January 24, 1937, "very suddenly, while [she] was recuperating at the Magee Hospital and getting ready to go home"; that she was in the Magee Hospital from the 14th day of November, 1936;

that she was in the West Penn Hospital for five and one-half months prior thereto; that she was well and had been dismissed by her doctor at the West Penn Hospital when she went over to the Magee Hospital. On cross-examination she further testified: "Q. Didn't you know you had what is called an hour-glass stomach clear back in 1936? A. Yes; and fully recovered. Q. And fully recovered from the hour-glass stomach? A. Yes, and able to take food. ...... Q. So you had an hour-glass stomach in 1936, did you? A. That is what they said; I don't know. But I certainly—Q. Well, did you have an hour-glass stomach in 1937? A. That I couldn't say either." On re-direct examination she testified that while in the West Penn Hospital she was treated for an acute gastric ulcer; and that the illness which occurred on January 24, 1937, was not an ulcer.

Plaintiff then rested her case, and she was called as on cross-examination by defendant. Plaintiff admitted that from June, 1936, when she entered the West Penn Hospital, she had never been outside a hospital until August 15, 1937, except to change from the West Penn Hospital to the Magee Hospital on November 14, 1936. She also admitted that she received from defendant during 1936 twenty-six sick benefit payments in the sum of $635 ending December 16, 1936. She further testified that her attack at the Magee Hospital on January 24, 1937, which required an operation three days later, was for an hour-glass stomach and adhesions. Plaintiff later denied on examination by her attorney that she was treated at the West Penn Hospital for an hour-glass stomach condition in 1936, from which, as she had previously testified, she suffered and recovered in that year.

Plaintiff's and defendant's points for binding instructions were refused, and the case was submitted to the jury. General exceptions to the charge of the court were granted to both parties.

Most of plaintiff's argument is devoted to those as-

signments which complain of the refusal of plaintiff's point for binding instructions, and the refusal of plaintiff's motion for judgment n. o. v. (third and sixth assignments of error).

There could have been no recovery by plaintiff without her own oral testimony, and ordinarily her credibility would be for the jury. *Nanty-Glo Borough v. American Surety Co.,* 309 Pa. 236, 163 A. 523; *Mitchell v. First National Bank of Confluence,* 136 Pa. Superior Ct. 467, 7 A. 2d 513. In such a case, if the court below found that the verdict was contrary to the weight of the evidence, it could do no more than grant a new trial. *Reel v. Elder,* 62 Pa. 308. Counsel for plaintiff argues, however, that defendant, by calling plaintiff as on cross-examination, was bound by her testimony. The rule is that one who calls an adverse party as on cross-examination is concluded by his testimony, if uncontradicted, and this includes not only his testimony as developed by the party who called him, but also statements then elicited by his own counsel which are merely explanatory of such testimony. *Readshaw et ux. v. Montgomery,* 313 Pa. 206, 209, 169 A. 135. But this rule is subject to qualification. For example, where, in the opinion of the trial judge, the testimony of the adverse party called as on cross-examination is false, the other party is not bound thereby and its credibility is for the jury *(Marach v. Kooistra et al.,* 329 Pa. 324, 328, 198 A. 66; *Alfandre et ux. v. Bream,* 135 Pa. Superior Ct. 538, 7 A. 2d 502) ; the same is true where there is such a degree of improbability in the statements themselves as to deprive them of credit however positively made, where there is contradiction of a witness by circumstances as well as by statements of others contrary to his own, where there is some intrinsic improbability in the statements of the witness, and he has shown himself unworthy of credit by his attempt to falsify a collateral transaction involved in the suit *(Burke, Ex'r, v. Ken-*

*nedy,* 286 Pa. 344, 133 A. 508). Plaintiff's testimony brought out as on cross-examination was contradictory of some of her other testimony. Her testimony as a whole was so inconsistent and contradictory that it would have been error for the court below not to have submitted it to the jury. *Burke, Ex'r, v. Kennedy,* supra. She had previously testified that she had what was called an hour-glass stomach back in 1936, but had fully recovered. As on cross-examination she again testified that while in the West Penn Hospital from June to November, 1936, she was treated for an acute gastric ulcer. In presenting her case she had testified that she could not say whether she had an hour-glass stomach in 1937, but as on cross-examination she testified that her condition in the Magee Hospital in 1937 was diagnosed as an hour-glass stomach with extensive adhesions. She also testified as on cross-examination that she was paid for sick benefits to December 16, 1936, while her previous testimony had been that when she left the West Penn Hospital on November 14, 1936, she was well. She had also previously testified that for 228 days prior to August 15, 1937, Dr. Cashman had seen her, while as on cross-examination she testified again that she was first taken ill on January 24, 1937, three days before her operation. It thus appears that 228 days calculated back from August 15, 1937, would come to January 1, 1937, and not to January 24, and would have her sick 23 days before she said she became ill. It is significant that payments for 26 weeks under her prior claim paid her for 4 weeks after November 14, 1936, when she said she was cured and went to the Magee Hospital for rest prior to her trip home.

Defendant was not bound by such testimony of plaintiff, and its credibility was clearly for the jury. The third and sixth assignments of error are overruled.

Counsel for plaintiff urges that in the event this court does not enter judgment in favor of plaintiff, a new trial

should be granted. In this connection counsel argues that the trial judge erred in instructing the jury as to the burden of proof. At the conclusion of the charge the trial judge asked both parties whether they had any suggestions for additions, corrections, or amplifications. None was offered, and plaintiff asked for a general exception only. Under such circumstances mere inadequacy of the charge affords no ground for a new trial. "The law is well settled that where a litigant fails to avail himself of an opportunity offered by the trial judge to suggest inaccuracies in its charge, he cannot complain thereafter, if there was a failure to correct the language employed. . . . . . . Plaintiff had his opportunity in court, and the only possible error could have been corrected on trial, had it been thought of any importance": *Broomall v. Pennsylvania Railroad Co.*, 296 Pa. 132, at page 140, 145 A. 703, at page 705. We are convinced by an examination of the charge of the court that the issues were fairly presented to the jury including upon whom rested the burden of proof. We find no such inadequacy in the charge as could be taken advantage of on a general exception. See *Hess et al. v. Mumma et al.*, 136 Pa. Superior Ct. 58, 7 A. 2d 72. In *Zenner v. Goetz et al.*, 324 Pa. 432, at page 435, 188 A. 124, at page 125, our Supreme Court, speaking through Mr. Justice MAXEY, held: "The 'burden of proof' rests throughout the trial on the party affirming facts in support of his case against a defendant, while 'the burden of coming forward with evidence' may shift from side to side during the progress of a trial." Plaintiff's chief complaint seems to be that defendant did not call other witnesses. There was no duty on defendant to prove by other witnesses and documents what plaintiff herself by her own testimony showed. The court below in its opinion properly said: "The defendant was not required to show by medical testimony that the illness, namely the

hour-glass stomach with multiple adhesions, was (not) a continuation of the illness in the West Penn Hospital, when the plaintiff's own testimony would be sufficient for the jury to draw that conclusion, if it so elected, and apparently it did so, as shown by its verdict."

In plaintiff's brief it is stated that a new trial should be granted in any event as the verdict was against the weight of the evidence. "The question as to whether the trial court abused its discretion in refusing a new trial may be raised on a single assignment setting out the motion and reasons for a new trial and the ruling of the court thereon; but the reasons therefor, if depended upon as errors must be separately assigned": *Riff et ux. v. Pittsburgh Railways Co.*, 298 Pa. 256, at page 262, 148 A. 102, at page 104. Plaintiff merely assigns as error the refusal of his motion for a new trial, quoting the motion verbatim. Moreover, this subject does not appear to be embraced in the statement of questions involved. However, the credibility of plaintiff and the weight of the evidence were primarily for the jury. *Wilson v. Kallenbach*, 332 Pa. 253, 256, 2 A. 2d 727. On this subject it was said in *Koch et al. v. Imhof et al.*, 315 Pa. 145, at page 147, 172 A. 672: "Ordinarily we are not interested in, nor will we consider the weight of the evidence on the one side or the other, as shown by the record of a trial in the court below; that was a subject for the jury primarily, for the court below secondarily, and, in the absence of a clear abuse of discretion, is not, on appeal, a matter for review. ...... Hence, one who asserts that a trial judge abused his discretion in granting or refusing to grant a new trial, has a heavy burden to carry; too heavy, indeed, unless he can show a clear abuse of discretion by the court below."

There is not the faintest indication in the present

case of an abuse of discretion that would warrant a reversal of the court below in refusing a new trial.

All the assignments of error are overruled.

Judgment is affirmed.