## Bogdanoff, to use, *v.* Manis et al. (Caplan, Appellant).

Argued January 4, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*David S. Malis,* with him *Louis Jacobs,* for appellant.

*Maurice G. Weinberg,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 29, 1943:

This is a proceeding in attachment execution on a judgment of $6,010.20 entered by plaintiff against Jules Manis and Dorothy E. Manis, his wife. Defendants had sold a drug store to Fred S. Russakoff and Mearl Katz and as part of the consideration received promissory notes of the purchasers totaling $5,500. When the writ of attachment issued, on September 17, 1941, twenty of the notes, each of $150 and payable one month apart, had not matured,* and Russakoff and Katz, summoned as garnishees, admitted this remaining indebtedness and their willingness to make payment to whoever was entitled. Tillie Caplan, mother of Dorothy E. Manis and also named as a garnishee, claimed that these twenty notes had been indorsed over to her by defendants prior to the attachment, so that the issue was really one between plaintiff as attaching creditor and Tillie Caplan as alleged owner of the notes. This issue was tried by the court sitting without a jury, and the finding was in favor of plaintiff. Tillie Caplan appeals.

Having established the existence of the indebtedness of Russakoff and Katz to defendants, plaintiff might well have rested, but his counsel proceeded to call appellant as for cross-examination. She testified that on several occasions between 1934 and 1939 she had made loans to defendants in the aggregate amount of $3,500, and that, in December, 1940, nine months before the issuance of the attachment, they had indorsed the twenty notes to her in part payment. Since plaintiff called no witnesses to contradict this testimony it is the contention of appellant that plaintiff was bound by it, and that the court was not justified in finding to the contrary. The rule thus invoked is, of course, a familiar one (*Readshaw v. Montgomery*, 313 Pa. 206, 209, 169 A. 135, 137; *Frew v. Barto*, 345 Pa. 217, 220, 26 A. 2d 905, 907), but it is

---

* The notes maturing prior to October 15, 1941, had been indorsed by defendants to one Harris, to whom Russakoff and Katz had accordingly been making payments.

limited by the equally well-established principle that the testimony adduced as on cross-examination may not only be contradicted by the direct testimony of other persons but may be impeached by its own inconsistencies or by such intrinsic improbability or obvious falsity as to stamp it as unworthy of credit: *Burke v. Kennedy,* 286 Pa. 344, 349, 133 A. 508, 510; *Marach v. Kooistra,* 329 Pa. 324, 327, 328, 198 A. 66, 68; *Reese v. Trasoff,* 108 Pa. Superior Ct. 478, 489, 165 A. 672, 676; *Alfandre v. Bream,* 135 Pa. Superior Ct. 538, 542, 543, 7 A. 2d 502, 504; *Pfordt v. Educators Beneficial Ass'n,* 140 Pa. Superior Ct. 170, 175, 176, 14 A. 2d 170, 173, 174.

The trial judge was of opinion that appellant's testimony was so manifestly unworthy of belief that he refused to consider himself concluded by it. Appellant testified that she had made four loans to her daughter over a course of five years. No writings of any kind were produced as evidence of such transactions and the loans were all said to have been made in cash, one in the amount of $500 and the others of $1,000 each. She said that the first two, aggregating $1,500, were from cash which she kept at home, and the other two from funds she obtained by borrowing on her life insurance policies. It appeared that several loans had been made on these policies, some of which she admitted were to finance alterations to an apartment house which she owned and for other purposes, but there was nothing to substantiate her claim that the particular borrowings she specified were loaned by her to her daughter. She testified that the moneys obtained on the policies were received by checks, that she gave these to her husband who deposited them in his bank, that he in turn gave her cash for them in installments of several hundred dollars a few days apart, and that from this cash she made two of the loans to her daughter,—a circuitous method adopted, she said, so that it would not be known by anybody except her husband that she had the money to lend to her daughter; this explanation was obviously devised to overcome the

damaging fact that the moneys she obtained from the insurance companies went into her husband's bank account. Plaintiff's judgment was entered on the 16th of September, 1941, the writ of attachment execution was served on the 17th, and on the 18th Russakoff and Katz received a letter from appellant dated the 16th but postmarked the 17th, informing them that the notes had been indorsed to her. She had given no such notice during the nine months after the alleged indorsements, and when she did give the notice she was, and for two weeks had been, confined in a hospital awaiting an operation; the trial judge naturally thought it strangely coincidental that under such circumstances she should suddenly, either on the day the judgment was entered against her daughter or the day the attachment was issued, have thought of notifying the makers of the note of her alleged ownership, although she claims that she did not then know of those proceedings. The court concluded that, notwithstanding the presumption that every holder of a negotiable instrument is deemed prima facie to be a holder in due course, the notes had not been indorsed to appellant before the issuance of the attachment, but that a prior transfer was alleged in order to defeat the attaching creditor's rights. We cannot say this conclusion was unjustified.

Toward the end of the hearing the court expressed the thought that plaintiff was bound by appellant's testimony, and her counsel states that because of that pronouncement he did not produce testimony available to him to substantiate her claim. That the judge's expression of opinion was merely tentative, however, was shown by his request that counsel for plaintiff should furnish a brief on the subject, and therefore appellant's counsel, an able and experienced lawyer, must have realized that a final decision of this question would be rendered only when the court made its findings on the evidence. The judge asked him whether he wished to offer any testimony and he stated that he did not; he is concluded by

the policy he thus chose to pursue in trying his case. It may be added that the testimony which he says he could have presented is apparently such that it would not have materially strengthened his client's claim.

Judgment affirmed.