## Michultka, Appellant, *v.* Grapin.

52

Submitted March 17, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Edwin P. Smith,* and *Dubyn & Smith,* for appellant.

*John Churchman Smith,* and *Gibbons, Buckley & Smith,* for appellee.

OPINION BY CERCONE, J., June 24, 1975:

The appellant, Mr. Michultka, brings this appeal dissatisfied with the amount of the damages verdict awarded by the jury. Although appellant challenges the propriety of two portions of appellee's summation to the jury, we find no error not adequately cured by the trial court's instructions and admonitions to the jury. Therefore, we find it necessary to discuss only one of appellant's alle-

gations of error herein, which arises from the trial court's refusal to adopt one of appellant's proffered points for charge.

At the trial of this trespass action arising from an April 7, 1971 automobile accident,[1] the defendant-appellee called a Dr. Rumsey who is the company physician for Mr. Michultka's employer, the Philadelphia Electric Company. The principal reason for appellee's calling Dr. Rumsey was to demonstrate appellant's extensive medical history prior to the accident, especially with regard to his recurring problems with lower back pain and hypertension.[2] By so establishing those facts appellee apparently felt that he might provide some basis for the jury's concluding that, if Mr. Michultka experienced pain after the accident, it had an origin which pre-dated the accident. However, during cross-examination Dr. Rumsey testified as follows, based upon his notes of an examination of appellant conducted on June 11, 1971:

"Dr. Rumsey: [P]erirectal abscess essentially healed; wears collar for cervical sprain. Saw Dr. Kozin [appellant's family doctor] today, no work. Return 6/18/71. . . .

Q. Now, Doctor, in your opinion at that time did this healing or essentially healed rectal abscess, would that have prevented him from working in and of itself.

A. No, sir.

Q. But yet you indicated no work?

---

1. There was no serious contest on the question of "liability" at trial. Virtually all emphasis was put upon the issue of damages or, more specifically, whether the accident caused any injury to Mr. Michultka.

2. As will be seen below, appellee may also have wished to establish that Dr. Rumsey's "diagnosis" of appellant as suffering from cervical sprain on June 11, 1971, was not in fact his own diagnosis, but was based upon his conversations with appellant's family physician, Dr. Kozin.

A. He had a cervical sprain. He was wearing a cervical collar (indicating).

Q. Likewise, Doctor, there was a reference made to the note of June 18, 1971, again made by you. And I believe, you read a portion of that notation. Would you read the entire one please?

A. Cervical sprain, rectal abscess. They were the two diagnoses that I was seeing him for. Saw Dr. Kozin today . . . improving.

Q. Again in your opinion, Doctor, why no work on that date?

A. Because of the cervical sprain."

At the close of the trial appellant requested that the court instruct the jury that:

"When a party calls a witness as part of their own case, they are bound by the testimony of that witness if the testimony is not impeached or contradicted. *Evans v. Philadelphia Trans. Co.*, 418 Pa. 567, 212 A.2d 440 (1965) ."

Since appellee's defense rested in part on a denial that appellant ever suffered from a cervical sprain, appellee's being bound by Dr. Rumsey's testimony would fortify the testimony of appellant's experts, that appellant was suffering from a cervical sprain two days after the accident. However, the court rejected this point, choosing instead to generally instruct the jury that the jury was the fact-finder, and that the credibility of all the witnesses, including the experts, was a determination solely within its province. Appellant claims that the court's refusal to charge on the requested point constituted reversible error. We disagree.

First, the facts of the accident bespeak a denial of appellant's having received a cervical sprain from the collision. This was a three car chain reaction accident from which appellant's automobile received no damage. Although Mr. Michultka testified that upon impact he was tossed about inside his car, and emerged therefrom

dizzy, with neck pain, and rubbing his hip and nose, appellee's impartial witnesses contradicted that testimony. Mr. Stenger, the driver of the second car which absorbed the brunt of the collision before striking appellant's automobile, testified that he observed appellant during the course of the collision and that appellant was not tossed about as a result of the impact. Furthermore, Mr. Stenger stated that Mr. Michultka was fine when he got out of his car and was not rubbing either his hip or his nose. Mr. Stenger's testimony was corroborated by the testimony of a police officer who arrived on the scene shortly after the accident occurred, and recorded that no injuries were sustained by appellant.

Second, appellee's principal medical witness, Dr. Wohl, rebutted appellant's contentions. Although Dr. Wohl's examination of appellant took place some two years after the accident, he conducted the examination during a period of time when appellant still complained of the same symptoms and pain which he attributed to the accident and his alleged cervical sprain. Based upon various classical tests generally employed by orthopedic surgeons, and designed to determine the existence and source of such injury and pain, Dr. Wohl concluded that appellant was experiencing no pain indicative of a cervical sprain.

Third, Dr. Rumsey was the company physician. As his testimony indicated, he was not a treating physician for company employees except in some cases where general surgery might be involved, in which cases he would see the employees as private patients. His job with the company was ordinarily to make the initial determination of whether an employee should be relieved from duties for medical reasons, and when he should return. He would also make certain that employees received the proper medical care from other physicians whose diagnoses and treatment he would routinely defer to. From

the above-quoted testimony of Dr. Rumsey, who conducted no tests on appellant for cervical sprain, it is apparent, or at least inferable, that he deferred to the diagnosis of Dr. Kozin, appellant's family physician and a witness on his behalf at trial.

Thus, it would be inaccurate in the instant case to suggest to the jury that appellee was somehow bound by Dr. Rumsey's statements concerning appellant's alleged cervical sprain. As was noted above, the evidence offered by appellee served to establish that the impact between Stenger's car and appellant's car was little more than a nudge, which caused no injury to appellant at that time. Such circumstances may be sufficient to rebut the superficially adverse testimony of Dr. Rumsey. *Piwoz v. Iiannacone*, 406 Pa. 588 (1962) ; *Evans v. Philadelphia Trans. Co.*, supra. As our Supreme Court stated in *Matthews v. Derencin*, 360 Pa. 349, 354 (1948) :

> " 'It cannot be said, as a matter of law, that the jury is bound to accept evidence as true, although not contradicted by direct evidence. Thus, where there is some intrinsic improbability in the statements of the witness . . . the jury may reject his testimony as incredible, although he is not impeached or contradicted by direct evidence.' Burke v. Kennedy, 286 Pa. 344, 349, 133 A. 508, 510; Bogdanoff v. Manis, 346 Pa. 243, 245, 30 A.2d 321, 322; Reese v. A. Trasoff, 108 Pa. Super. 478, 488, 489, 165 A. 672, 676; Pfordt v. Educators Beneficial Association, 140 Pa. Super. 170, 175, 14 A.2d 170, 173."

Furthermore, appellant's allegation of injury was also inferentially contradicted by the testimony of Dr. Wohl, even though a substantial period of time elapsed between the time of the accident and Dr. Wohl's examination.

In any event, the so-called rule that one is bound by the testimony of his witness, unless the witness is impeached or his testimony contradicted, today has little

currency despite the fact that it is frequently parroted. See 32A C.J.S., Evidence § 1040(1) at pp. 766-68. Especially when one realizes that the jury is entitled to reject evidence offered by a witness adverse to the party who called that witness, simply because it is inherently incredible, the so-called rule loses all resemblance to a rule of law. Thus, a party may ask the jury not to find as a fact that which his opponent has the burden of proving, even though the former party has called a witness whose testimony supports his opponent's contention. Any dogmatic application of the rule, as appellant has argued for herein, is a step in the direction of wager of law wherein one irrebutably vouched for the truthfulness and credibility of his witnesses. 3A Wigmore on Evidence §897 (Chadbourne rev. 1970) ; 4 Jones on Evidence §§26.10-12 (2d ed. 1972). As the Massachusetts Supreme Court long ago stated in *Brown v. Bellows*, 21 Mass. (4 Pick.) 178, 194 (1826) :

> "It would evidently be a rule that would operate with great injustice, that a party calling a witness should be bound by the fact which was sworn to. No one would contend for a rule so inexpedient."

Thus, questions concerning the probative value of testimony by witnesses called by either side, while an appropriate point for argument and explanation by counsel in their summations, should not be resolved by dubious rules of thumb incorporated into the court's charge to the jury.

We conclude that the instruction sought by appellant, especially on facts of the instant case, would serve more to confuse than to enlighten. The lower court therefore chose the proper course in generally instructing the jury on its task as the finder of fact.

Judgment is affirmed.