558 A.2d 109

Seija K. GORFTI, In her own right and as Parent and Natural Guardian and Ahmed Gorfti, In his own right and as Parent and Natural Guardian of Dean Gorfti and Michael Gorfti

v.

Bruce B. MONTGOMERY, Appellant.

Superior Court of Pennsylvania.

Argued March 29, 1989.

Filed May 12, 1989.

James M. Penny, Jr., Philadelphia, for appellant.

A. Charles Peruto, Sr., Philadelphia, for appellees.

Before MONTEMURO, TAMILIA and MONTGOMERY, JJ.

MONTEMURO, Judge:

This is an appeal from an order removing a non-suit and granting appellee a new trial[1] in a medical malpractice action.

[1] Appellee has argued that such an order is interlocutory and unappealable. However, Pa.R.A.P. 311(a)(5) provides in pertinent part as follows:

At the end of May, 1983, appellee Seija K. Gorfti, then 34 years old, visited appellant, her regular gynecologist, complaining of a lump in her left breast. Upon examination, the nodule proved to measure less than one centimeter. Appellant ordered a mammogram which was performed two weeks later, and interpreted by the radiologist as demonstrating normal results, although with the proviso that the patient should be monitored. Appellant cancelled a June appointment with appellee on the basis of these findings. During the parties' telephone conversation of June 17 regarding the test results, appellee informed appellant that the lump had decreased in size, and was in turn instructed that she should plan to be examined again in three months, or sooner should soreness or an increase in the size of the lump occur. In December of 1983, with no intervening contact between the parties, appellee revisited appellant, this time presenting a tumor six centimeters in diameter, with associated enlargement of the lymph nodes. Following an unsuccessful attempt at needle aspiration, appellee was referred to a specialist whose biopsy of the lump proved it to be malignant. Almost immediately, appellee underwent a modified radical mastectomy; however, as the lymphatic swellings indicated, metastasis had already occurred. Despite continuous treatment, appellee died in August 1987, three months after the conclusion of trial.

Suit was instituted in October, 1985, alleging negligence in appellant's examination, diagnosis, and treatment of appellee's condition, and claiming damages for loss of both spousal and filial consortium. Trial commenced on May 11, 1987. As her first witness, appellee called appellant as of cross examination; the second witness was her expert, Dr. Donna Glover, and plaintiff's evidence concluded with the testimony of appellee herself. Appellant then moved successfully for the imposition of compulsory non-suit. The

(a) General Rule. Except as otherwise prescribed by general rule, an appeal may be taken as of right from:
(5) New trials. An order in a civil action or proceeding awarding a new trial ...
This Rule merely codifies a long standing common law practice in Pennsylvania. *See* 1 *Pennsylvania Appellate Practice* § 311:28 (1986).

trial court granted appellee's post trial motions for removal of the non-suit and for a new trial, and this appeal followed.

Appellant has presented us with two issues which mirror the arguments underlying the Motion for Non–Suit.

█ It is first contended that non-suit is compelled by the rule enunciated in *Mudano v. Philadelphia Rapid Transit Co.*, 289 Pa. 51, 137 A. 104 (1927). There our supreme court held that because the two medical experts produced by the plaintiff attributed his condition to irreconcilable causes, the testimony of both should be stricken. The argument herein is predicated on the assumptions that appellant was called as a witness for appellee, who is therefore bound by his testimony [2], and that the evidence elicited represented an absolute conflict with the conclusions of Dr. Glover, "so as to neutralize each other's evidence." *Id.*, 289 Pa. at 61, 137 A. 108.

Appellee's counter argument is that since appellant was called as of cross-examination, he was not presented as an expert on her behalf, and she is not bound by his testimony. It is contended that because of the tactical posture in which appellant's evidence was given, the contradictions between his testimony and that of appellee's expert are matters to be resolved by the jury. To support his contention, appellee directs our attention to 42 Pa.C.S.A. § 5935,[3] which permits

**2.** At oral argument, appellant denied ever having advanced the theory that appellee is bound by the evidence of her adverse witness. However, such a contention is both implicit in and necessary to the *Mudano* rule, as well as appellant's reliance thereon. Were this not the case, appellant could attach no importance to the contradictions he finds so critical.

**3.** § 5935. Examination of person adversely interested

In any civil action or proceeding, whether or not it is brought or defended by a person representing the interests of a deceased or lunatic assignor of any thing or contract in action, a party to the record, or a person for whose immediate benefit such proceeding is prosecuted or defended, or any director or other officer of a person which is a party to the record, or for the immediate benefit of which such action or proceeding is prosecuted or defended, or any other person whose interest is adverse to the party calling him as a witness, may be compelled by the adverse party to testify as if under cross-examination, subject to the rules of evidence applicable to witnesses under cross-examination, and the adverse party calling

an adversary to be called as of cross-examination during a party's case in chief.

Appellant's view is that *Mudano* and § 5935 are separate and distinct, the latter confined to regulating factual testimony, and the former controlling as to opinion testimony, and as "defining the consequences of presenting conflicting expert testimony on crucial issues within the plaintiffs' case." (Appellant's Brief at 12.) By means of this contention, appellant posits a "spheres of influence" rule, requiring a determination as to which of appellant's two incarnations takes precedence, that of expert, or that of adversary. We find that such a distinction is unnecessary.

First, we find the *Mudano* principle to have been modified by our supreme court in *Brannan v. Lankenau Hospital*, 490 Pa. 588, 417 A.2d 196 (1980). There the Court noted that since the *Mudano* decision, "[the Supreme] Court has allowed juries to consider and resolve conflicts among expert witnesses." *Id.*, 490 Pa. at 596, 417 A.2d 200. Although *Brannan* differs factually from the case at bar in that the expert testimony there suffered from minor internal inconsistencies rather than absolute divergences as to liability, we find that *Brannan* is consistent with § 5935. As appellee points out, § 5935 nowhere makes mutually exclusive expert and adversarial testimony. However, § 5935 does specify adherence to the Rules of Evidence concerning cross examination.

In Pennsylvania, a party calling a witness as of cross is bound by the testimony thus evoked unless it is contradict-

such witnesses shall not be concluded by his testimony, but such person so cross-examined shall become thereby a fully competent witness for the other party as to all relevant matters whether or not these matters were touched upon in his cross-examination, and also, where one of the several plaintiffs or defendants, or the person for whose immediate benefit such proceeding is prosecuted or defended, or such director or officer, or such other person having an adverse interest, is cross-examined under this section, his coplaintiffs or codefendants, or fellow directors or officers, shall thereby become fully competent witnesses on their own behalf, or on behalf of the person of which they shall be directors or officers, as to all relevant matters, whether or not these matters were touched upon in such cross-examination.

ed by other evidence, not limited to direct testimony, or is inherently incredible. *Piwoz v. Iannacone*, 406 Pa. 588, 178 A.2d 707 (1962). The application of this principle is apparent from the decisions in *Stack v. Wapner*, 244 Pa.Super. 278, 368 A.2d 292 (1976), and *Michultka v. Grapin*, 235 Pa.Super. 51, 340 A.2d 576 (1975), which present striking similarities to the appellant's case. In both instances physician/defendants were called by patient/plaintiffs as on cross-examination. Because their testimony was contradicted by plaintiffs' experts, it was found not to have been binding on the calling party. Judge Spaeth, speaking for an en banc panel of this court in *Stack*, observed with approval the waning vitality of the notion that a party is irrefutably bound by the statements of one's own witnesses, and based his conclusions on the predecessor to § 5935, 28 P.S. § 381, and *Piwoz, supra.* The court in *Michultka, supra,* echoes this theme. We find these precedents both authoritative and dispositive. *Compare, Scacchi v. Montgomery*, 365 Pa. 377, 75 A.2d 535 (1950); *Carl v. Matzko*, 213 Pa.Super. 446, 249 A.2d 808 (1968). (Plaintiffs in both cases bound by evidence of defendant physicians in malpractice action where testimony neither rebutted nor incredible). For the foregoing reasons, we find the trial court to have correctly determined that *Mudano* was not controlling.

■ Appellant's second argument is that compulsory nonsuit should not have been removed because no prima facie case of malpractice was established by appellee. To gauge the merits of such an allegation, the correct standards of review must be utilized:

It has long been settled that a compulsory nonsuit can only be granted in cases where it is clear that a cause of action has not been established. The plaintiff must be given the benefit of all favorable evidence along with all reasonable inferences of fact arising from that evidence. Any conflict in the evidence must be resolved in favor of the plaintiff ... We must therefore review the evidence

to determine whether the order entering judgement of compulsory nonsuit was proper.

*Coatesville Contractors and Engineers, Inc. v. Borough of Ridley Park*, 509 Pa. 553, 559–60, 506 A.2d 862, 865 (1986) (citations omitted); *Corbett v. Weisband*, 380 Pa.Super. 292, 551 A.2d 1059 (1988).

The requirements of demonstrating a case of professional medical negligence was recently reiterated by this court in *Corbett v. Weisband, supra:*

> (the plaintiff) must prove by competent evidence that the conduct of Dr. [Montgomery] fell "below the standards of reasonable medical practice, and that her injuries [were] caused by [his] failure to provide such medical care." *Reichman v. Wallach*, 306 Pa.Super. 177, 183, 452 A.2d 501, 504 (1982) (Brackets in original).

*Id.*, 380 Pa.Superior Ct. at 302, 551 A.2d 1064.

The pivotal questions herein are (1) whether the tumor which appeared on appellee's left breast in May was the same as the one presented to appellant in December; (2) whether appellant's failure to perform certain diagnostic procedures at the initial visit exacerbated appellee's condition, thus decreasing her chances for successful treatment.

As to both of these questions, we note, in agreement with the trial court, that appellee's expert had been poorly prepared for trial. However, a review of Dr. Glover's testimony reveals that she indeed opined with a reasonable degree of medical certainty that both of the questions posed could be answered in the affirmative. Given this circumstance, we find the trial court to have been correct in its decision to remove the non-suit.

Order affirmed.