**Long v. Vincent**

*Carol A. Shelly,* for plaintiffs.
*Kevin H. Wright,* for defendants.

RUFE, J., *J.,* July 21, 1995—This opinion is written pursuant to the appeal of defendants, Gregory J. Vincent, M.D., George N. Costantino, M.D., William L. Kliefoth, D.O., and C.V.C. Surgical Associates, P.C., and the appeal of plaintiffs, George D. Long and Adeline Long, from our order of June 5, 1995 whereby we awarded plaintiffs George D. Long and Adeline Long, a new trial on liability and damages exclusively as to the issue of whether Dr. George J. Vincent was negligent in his handling of a choledochoscope during George Long's gallbladder surgery.

On December 16, 1988, Mr. Long underwent a cholecystectomy with bile duct exploration performed by defendant, Dr. Vincent. In the course of the procedure, a tear of the common bile duct occurred. Dr. Vincent repaired the tear and stented it with a T-tube. In the

months following the surgery, Mr. Long suffered from various complications relating to the T-tube insertion. In March of 1989, Mr. Long was admitted to the hospital with a diagnosis of obstructive jaundice secondary to stricture of the common hepatic duct. On March 21, 1989 a dilation of the biliary stenosis stricture was performed at Hahnemann Hospital. Subsequent to the procedure, Mr. Long sought treatment with an interventional radiologist. He sought no further treatment from any of the defendant doctors.

The Longs instituted suit against defendants on February 21, 1991, claiming that defendants had been negligent in causing the tear of the duct and negligent in the care and treatment of Mr. Long postoperatively. A jury trial was held from November 16 to November 23, 1993 in which both parties introduced expert testimony. At the close of the testimony plaintiffs requested that the jury be charged on the doctrine of res ipsa loquitur. The charge was not read to the jury. A verdict was returned in favor of the defendants. Timely post-trial motions were submitted by plaintiffs alleging, inter alia, that a new trial should be granted in light of the court's failure to charge on res ipsa loquitur and alleging various evidentiary errors made by this court during the course of the trial. By the order of this court dated June 5, 1995, plaintiffs were awarded a new trial on liability and damages exclusively as to Dr. Vincent and his possible negligence in handling the choledochoscope. Post-trial relief was denied as to the remaining defendants. The instant appeal followed.

It is well settled in the law that if a proper instruction on a particular issue is merited by the evidence, requested by a party and is refused by the trial court, a new trial will be warranted as long as the substance of that instruction has not otherwise been covered in

the court's general charge. *Ligon v. Middletown Area School District,* 136 Pa. Commw. 566, 584 A.2d 376 (1990); *Commonwealth v. LaMassa,* 367 Pa. Super. 54, 532 A.2d 450 (1987). Having reviewed the evidence adduced at trial, we concluded that the doctrine of res ipsa loquitur was applicable to the facts of this case. An examination of the instructions given to the jury at the close of the trial, showed that the doctrine was not addressed specifically, or otherwise covered in the whole of the jury charge. Consequently, we found that a new trial was warranted. It is these determinations to which the defendants found fault.

"A plaintiff is entitled to a jury instruction on res ipsa loquitur where [he or she] has satisfied the requirements of the Restatement (Second) of Torts §328D." *Sedlitsky v . Pareso,* 400 Pa. Super. 1, 4, 582 A.2d 1314, 1315 (1990); see also, *Gilbert v. Korvette's Inc.,* 457 Pa. 602, 327 A.2d 94 (1974). This section provides:

"(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

"(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

"(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

"(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

"(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

"(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different

conclusions may reasonably be reached." Restatement (Second) of Torts §328D (1965).

In the instant matter, defendants believed that plaintiffs failed to establish the first and second elements required under section 328D and, therefore, the court was not required to instruct on res ipsa loquitur. Although we believed the argument well taken at the time of trial, we were persuaded post-trial that we had erred in refusing the charge. Therefore, we granted the new trial, limited to claims arising out of that perceived error only.

First, defendants maintained that plaintiffs were bound by the expert testimony presented in their case-in-chief that the tear in the hepatic duct was a complication of surgery which can and does occur in the absence of negligence. Specifically, defendants pointed out that Dr. Vincent, while testifying as on cross-examination, stated that a ductal tear is a recognized complication of common bile duct exploration with a choledochoscope. Defendants contended that plaintiffs were bound by this testimony since their own expert agreed with Dr. Vincent's statements. A review of the testimony revealed that this is not accurate.

One statement made by plaintiff's expert, Dr. Goldstone, and extracted by defendants reads as follows:

"By Mr. Wright:

"Q. The larger the wound you put in this duct the more likely it is that you're going to get some scarring in the duct?

"By Dr. Goldstone:

"A. I would like to say something.

"Q. Could you just answer that question?

"A. No, I can't answer that question. I can say that surgery and medicine is pros and cons. Nothing we

do doesn't have some sort of risk involved. The decision-making is that, in surgical teaching is that the larger the tube, the benefits of a larger tube that can safely be put in the duct—I wouldn't say ripping a duct to put in a big tube either. What I'm saying is that the advantages of having put in a bigger tube, even though you may have had to make the incision to put it in a tiny bit larger far outweigh the risks of putting in a too small tube that's going to become strictured and blocked." (N.T., Volume V, 11-22-93, pp. 98-99.)

The second of Dr. Goldstone's statements referred to by defendants reads:

"By Mr. Wright:

"Q. Doctor, you said that nothing we do doesn't have risks meaning we in the medical profession—not including me—including Dr. Vincent and Dr. Costantino.

"A. Correct.

"Q. You would also agree that medicine is not an exact science.

"A. No.

"Q. You don't agree with that?

"A. No, I agree with that." (N.T., Volume V, 11-22-93, p. 99.)

Defendants argued that these two statements by Dr. Goldstone corresponded with Dr. Vincent's testimony that ductal tears are a complication of gallbladder surgery.

"In Pennsylvania, a party calling a witness as of cross is bound by the testimony thus evoked unless it is contradicted by other evidence, not limited to direct testimony, or is inherently incredible." *Gorfti v. Montgomery,* 384 Pa. Super. 256, 260-61, 558 A.2d

109, 111 (1989); see also, *Piwoz v. Iannacone,* 406 Pa. 588, 178 A.2d 707 (1962). A party will not be bound by a defendant's testimony where said testimony is contradicted by the testimony of the plaintiff's own expert. *Stack v. Wapner,* 244 Pa. Super. 278, 368 A.2d 292 (1976); *Michultka v. Grapin,* 235 Pa. Super. 51, 340 A.2d 576 (1975). In the instant matter, plaintiffs' expert clearly and emphatically contradicted the testimony expounded by Dr. Vincent. The following evidences the contradiction:

"By Ms. Shelly:

"Q. Do you have an opinion as to whether or not this type of injury as has been described occurs in the absence of negligence by the acting surgeon?

"A. I don't believe it occurs in the absence of negligence.

"Q. And can you just explain that a little bit for the jury? What do you mean by that?

"A. I mean that if you properly handle the choledochoscope and look through it and properly use it the way it's intended to be used, you visualize what you're doing before you do it, so you use it as the surgical instrument that it was intended. If you are not careful with what you're doing, the safest of instruments becomes a battering ram and can destroy the duct." (N.T., Volume V, 11-22-93, pp. 20-21.)

We could not accept defendant's view that Dr. Goldstone sufficiently equivocated in his testimony so as to justify the conclusion that he agreed with Dr. Vincent's opinions. Dr. Goldstone's statements concerning the uncertainty of the medical sciences were very broad and pertained to whether the correct T-tube size was inserted into the duct, not whether Dr. Vincent negligently operated the choledochoscope. We did not believe that

such a relatively minor divergence, in only part of Dr. Goldstone's expert testimony, when viewed against the testimony taken as a whole, sufficiently compromised his opinion to justify a finding that plaintiffs were bound by Dr. Vincent's testimony. See *Brannan v. Lankenau Hospital,* 490 Pa. 588, 417 A.2d 196 (1980). Dr. Goldstone's testimony taken as a whole was sufficient to establish that the tear to Mr. Long's bile duct was not a usual complication of exploration of the duct with a choledochoscope. Thus, plaintiffs satisfied the first element of res ipsa loquitur as defined in section 328D.

Secondly, defendants asserted that the Longs failed to sustain their burden under the second element of section 328D because the evidence did not sufficiently eliminate other possible causes of the tear in the duct. Again, we rejected defendants' argument.

In order to satisfy the second requirement of section 328D, plaintiffs, "were not required to exclude all other possible explanations for the injury. Restatement (Second) of Torts, §328D comment e;" *Leone v. Thomas,* 428 Pa. Super. 217, 222, 630 A.2d 900, 902 (1993); *Carney v. Otis Elevator Company,* 370 Pa. Super. 394, 399, 536 A.2d 804, 806 (1988). In addressing this burden of proof the court in *Leone* stated:

"Expert testimony may be sufficient to establish the elements of section 328D such that a res ipsa loquitur instruction is warranted even when a quantity of contrary evidence has been produced by the defendant. *Clemons [v. Tranovich],* 403 Pa. Super. at 434, 589 A.2d at 263; *Sedlitsky,* 400 Pa. Super. at 5, 582 A.2d at 1316. It is enough that negligence on the part of Thomas is the more probable explanation of the injury suffered. This inference is not for the court to draw, in any case where either the conclusion of negligence or its absence is reasonable; and even though the court would not

itself find negligence, it must still leave the question to the jury if reasonable [persons] might do so. Restatement (Second) of Torts §328D comment e; *Sedlitsky* at 5, 582 A.2d at 1316." *Leone, supra* at 222, 630 A.2d at 902.

During his testimony, Dr. Goldstone stated that he did not know of any other reasonable causes for the tear in the duct besides the force used by Dr. Vincent when handling the scope. Based upon such testimony, there was a reasonable basis for the jury to have drawn the inference of negligence, and they should have been permitted to do so. "An inference of res ipsa loquitur does not disappear in the face of contrary evidence." *Sedlitsky, supra* at 5-6, 582 A.2d at 1316.

Moreover, res ipsa loquitur is designed to apply in situations in which a patient is rendered unconscious and receives some sort of injury from the instrumentalities used in the course of the procedure. *Jones v. Harrisburg Polyclinic Hospital,* 496 Pa. 465, 437 A.2d 1134 (1981). Neither party disputed the fact that the tear occurred during the exploration of the duct with the choledochoscope. Nor was it disputed that the scope was under the guidance and exclusive control of Dr. Vincent during the time it was in the duct. In light of these facts and circumstances, the jury should have been permitted to reasonably infer both negligence and causation from the occurrence of an unusual event and Dr. Vincent's relation to it. Restatement (Second) of Torts §328D comments b, g. *Leone, supra* at 222, 630 A.2d at 902. Having presented an adequate basis for the jury to have found Dr. Vincent's actions the more probable cause of Mr. Long's injury, plaintiffs satisfied their burden under the second element of section 328D.

The third element, that Dr. Vincent owed a duty to protect Mr. Long from damage to the bile duct during

exploration, was uncontested between the parties. We concluded that since the Longs had established the three required elements of section 328D, the question of whether the inference of Dr. Vincent's negligence could be drawn under the theory of res ipsa loquitur should have been for the jury to resolve.[1]

Lastly, defendants maintained that the disposition of the Longs' case was not in any way prejudiced by the court's failure to charge on res ipsa loquitur. This argument was likewise dismissed.

We could not determine from the record exactly how the jury reached its verdict in favor of defendants. While it is true that the jury members could have justifiably believed that the injury to the duct could not have been prevented, it was equally feasible that the jury could have determined that plaintiffs simply did not present sufficient evidence of negligence or causation. See *Sedlitsky, supra* at 10, 582 A.2d at 1318. In the latter situation, the Longs may very well have been prejudiced by this court's failure to charge on res ipsa loquitur, which is an evidentiary tool permitting a plaintiff to prove the elements of negligence and causation by circumstantial evidence. *Id.* The request to instruct on res ipsa loquitur was specifically made in plaintiff's requested points for charge and an exception to the court's failure to so charge the jury was made on the record. (N.T. 11-23-93, Volume VI, pp. 37-38.). The absence of that instruction may have significantly diminished the opportunity for plaintiffs to have received

---

1. It should be noted that the elements of res ipsa loquitur were only established in the context of the tear in the duct and not to any other aspect of Mr. Long's treatment with any of the other defendant doctors.

a verdict in their favor. Given that the outcome of the case may have been different with regard to Dr. Vincent's negligence had the proper instruction been read, we found that the Longs' case had been prejudiced.

For these reasons, we awarded a new trial to plaintiffs with regard to Dr. Vincent's possible negligence in handling the choledochoscope.

In addition to the issue raised by both parties concerning res ipsa loquitur, plaintiffs argued that reversible error occurred when this court permitted defendants' expert, Dr. Melvin Moses, to testify to matters outside the limitations of his expert report. Specifically, plaintiffs maintained that Dr. Moses' report listed only bald assertions and never enunciated the facts upon which he based his opinion. Therefore, plaintiffs claimed that the report clearly violated the spirit and letter of Pa.R.C.P. 4003.5.

A trial judge has wide discretion to allow the admission of expert testimony into evidence and the decision should not be reversed unless there has been a clear abuse of discretion. *Greer v. Bryant,* 423 Pa. Super. 608, 621 A.2d 999 (1993); *Bowser v. Lee Hospital,* 399 Pa. Super. 332, 582 A.2d 369 (1990), *alloc. denied,* 527 Pa. 614, 590 A.2d 755 (1991). The trial testimony of an expert is limited by the provisions of Pa.R.C.P. 4003.5(c). The rule provides that an expert is only permitted to testify to matters which are in the fair scope of the report offered by such expert during discovery. *Id.; Greer, supra* at 615, 621 A.2d at 1003. See also, Pa.R.C.P. 4003.

"In deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on

the word 'fair.' The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pretrial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response." *Dible v. Vagley,* 417 Pa. Super. 302, 315, 612 A.2d 493, 499 (1992); *alloc. denied* in quoting *Wilkes-Barre Iron v. Pargas of Wilkes-Barre,* 348 Pa. Super. 285, 290, 502 A.2d 210, 212-13 (1985).

We found that under this standard, the testimony of Dr. Moses was within the fair scope of his report. The initial report of June 16, 1993 lists the materials viewed by Dr. Moses in formulating his report. Based upon his review of these materials, Dr. Moses was of the opinion that he could find nothing in the record to support plaintiffs' allegation that the postoperative care provided to Mr. Long was below the standard of care. In the supplemental report dated November 12, 1993, Dr. Moses again listed several key findings and concluded his report with the exact same opinion as provided in his initial report, namely, that the post-operative care of Mr. Long was within the standard of care. Finally, the opinion provided by Dr. Moses at trial was nearly verbatim from that provided in his pretrial reports. All three times in which Dr. Moses was required to render an opinion, his opinion was consistent. A review of Dr. Moses' pretrial reports, in their entirety, showed that the doctor adequately provided the basis for his opinion. Consequently, we could find no basis to support plaintiffs' assertion that they were prevented from preparing a meaningful response or that they were misled as to the nature of Dr. Moses' testimony.

Plaintiffs also contested our allowing Dr. Moses to testify that a tear to the common bile duct can occur in the absence of negligence, since plaintiffs believed that such testimony was beyond the scope of Dr. Moses' reports. However, in his June 3, 1993 report, Dr. Moses writes, "Bile duct injury is a complication of gallbladder and biliary tract surgery." In his supplemental report of November 12, 1993, Dr. Moses writes, "Injury of the common bile duct is a known complication of biliary tract surgery and, in itself, does not automatically mean that excessive force was used." Although the doctor did not specifically use the term "tear" in any of his pretrial reports, we found his trial testimony to be within the scope of his reports. The only injury to the duct at issue in this case is the tear to the duct. We could not reasonably conclude that the slight discrepancy in the language used by Dr. Moses misled the plaintiffs as to the nature of Dr. Moses' opinion. The testimony was sufficiently similar as to comply with the requirements of Pa.R.C.P. 4003.5.

Additionally, plaintiffs maintained that this court erred by refusing to permit plaintiffs to present Frank Vogel, M.D., as a rebuttal witness. Plaintiffs claimed that the testimony of Dr. Vincent concerning the use of an interventional radiologist constituted an opinion which was not provided to plaintiffs prior to trial in violation of Pa.R.C.P. 4003.5. As a result, plaintiffs were prejudiced by the "surprise" testimony and should have been given the opportunity to rebut that testimony.

Initially, it must be noted that the decision to refuse rebuttal evidence rests in the sound discretion of the trial court. Absent an abuse of that discretion, the trial court's decision must stand. *Jewelcor Jewelers & Distributors Inc. v. Corr,* 373 Pa. Super. 536, 542 A.2d 72 (1988).

Plaintiffs' argument that Dr. Vincent's testimony violated Rule 4003.5 was unpersuasive. In *Neal by Neal v. Lu,* 365 Pa. Super. 464, 530 A.2d 103 (1987), the court held that the language of Rule 4003.5 governs the discovery of opinions that a party solicits from a *nonparty* expert. The court referred to the explanatory comments under Rule 4003.5 which state:

"Rule 4003.5 is not applicable to discovery and deposition procedure where a defendant is himself an expert, such as a physician, architect or other professional person, and the alleged improper exercise of his professional skills is involved in the action. Such a defendant can be examined by written interrogatories under Rule 4005 or by oral deposition under Rule 4007.1." Pa. R.C.P. 4003.5 explanatory note—1978.

In *Neal,* the court concluded that the complaining party had taken full advantage of the opportunity to depose the defendant prior to trial and, therefore, could not claim that he was surprised by the defendant's testimony. *Neal, supra* at 471, 530 A.2d at 107.

In the instant matter, plaintiffs had the opportunity to depose Dr. Vincent prior to trial. They were free to ask questions of Dr. Vincent concerning radiological intervention but they did not do so. Plaintiffs should not be permitted to claim surprise as a result of testimony which they elicited in the course of their own direct examination of Dr. Vincent, especially when the issue could have been addressed in the course of a pretrial deposition. Therefore, we determined that plaintiffs did not suffer any prejudice which would have justified allowing Dr. Vogel to testify as a rebuttal expert.

For all the foregoing reasons, we entered the order dated June 5, 1995.